UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

ITHACA CAPITAL INVESTMENTS I, S.A., ITHACA
CAPITAL INVESTMENTS II, S.A., and ORESTES
FINTIKLIS,

                              Plaintiffs,

- against -

TRUMP PANAMA HOTEL MANAGEMENT LLC,
and TRUMP INTERNATIONAL HOTELS
MANAGEMENT, LLC,

                              Defendants.

----------------------------------------------------------------------x

Civil Action No. 1:18-cv-390

**COMPLAINT**

       Plaintiffs Ithaca Capital Investments I, S.A. ("Ithaca I"), Ithaca Capital Investments II,

S.A. ("Ithaca II," and collectively with Ithaca I, "Ithaca"), and Orestes Fintiklis ("Fintiklis")

(collectively with Ithaca, "Plaintiffs"), by and through their counsel Akerman LLP, hereby file

their Complaint (the "Complaint") against defendants Trump Panama Hotel Management LLC

and Trump International Hotels Management, LLC (collectively, "Defendants" or "Trump"), and

allege as follows:

<u>**INTRODUCTION**</u>

       1.     This dispute concerns Trump's wrongful attempt to bully, intimidate and harass

third-parties by attempting to join them to an arbitration pending before the International

Chamber of Commerce (the "ICC") concerning Trump's mismanagement of the Trump

International Hotel & Tower Panama ("Trump Panama Hotel" or "Hotel").

       2.     In doing so, Trump hopes that it can force the claimant in the arbitration

proceeding – Hotel TOC, Inc. ("Hotel TOC") – to abandon its claims for more than $15 million

in damages, avoid termination of the management agreement for the Hotel, and distract the

arbitrators from its utterly incompetent management of the Hotel.

3.      Rather than address the claims made against it in the arbitration, Trump responded by asserting absurd third-party RICO claims against Hotel TOC's beneficiaries – the Hotel's owners – as well as the other owners of condominium hotel units in the Hotel, and lawyers for Hotel TOC, among others.  Aside from the fact that Trump's claims are entirely fictitious and frivolous, Trump has no arbitration agreement with these third-party respondents, much less an agreement that would permit the joinder of such claims in the existing arbitration.

4.      As background, the Trump Panama Hotel is part of a 70-story, luxury mixed-use, multi-component tower located on the waterfront overlooking Panama Bay in the Punta Pacifica area of Panama City, Panama, which includes a hotel, residences, event space, restaurants, and casino.  Trump manages the Hotel, which is governed by a hotel management agreement ("HMA"), dated April 11, 2008, as amended.[1]

5.      In early 2017, Ithaca I acquired 202 of the 369 hotel units in the Trump Panama Hotel, and Ithaca II acquired the hotel amenities units, which includes the pool and restaurant spaces, among others.  In connection with their acquisition of the majority of the units in the Trump Panama Hotel, Trump, Ithaca I, and Ithaca II entered into an Agreement in Connection with Bulk Sale (the "Bulk Sale Agreement").  A copy of the February 15, 2017 Bulk Sale Agreement is attached as **Exhibit B**.

6.      The Bulk Sale Agreement includes an unequivocal, mandatory forum selection clause, which states that "[Trump, Ithaca I, and Ithaca II] … irrevocably submit and consent to the *exclusive* jurisdiction of the federal and state courts of the State of New York and agree that

---

[1] A true and correct copy of the relevant provisions of the Amended and Restated Hotel Management Agreement for Trump Ocean Club International Hotel & Tower among Trump Panama Hotel Management LLC, Newland International Properties Corp., Hotel TOC Inc. and Owners Meeting of the P.H. TOC is attached hereto as **Exhibit A** (without schedules).

*all suits, actions or legal proceedings* with respect to [the Bulk Sale Agreement] shall be brought only in the State of New York…."  *See* Exhibit B at ¶ 9 (emphasis added).

7.     Yet, despite this clear and unambiguous language making the **courts of New York the exclusive jurisdiction** for such disputes, Trump is attempting (through the assertion of third-party claims) to sue Plaintiffs for claims relating to the Bulk Sale Agreement by joining them to the pending ICC arbitration relating to Trump's gross mismanagement of the Trump Panama Hotel and its breach of the HMA (the "Arbitration").  A copy of the October 14, 2017 Request for Arbitration (without exhibits) is attached as **Exhibit C**.

8.     Trump's allegations against the third-parties in the Arbitration are a conspicuous effort to bully the Hotel's owners into dropping their well-supported claims of mismanagement against Trump and to divert attention from Trump's failures as a hotel operator.  To that end, Trump filed a **73-page** complaint in the Arbitration alleging an outlandish conspiracy theory that threatens these third-parties with damages of up to $150 million for conduct that amounts to a supermajority of the beneficiaries attending a meeting and voting (unanimously) to remove Trump as operator of the Trump Panama Hotel.  A copy of Trump's December 4, 2017 Request for Joinder and Third-Party Claims (without exhibits) is attached as **Exhibit D**.

9.     However, if Trump, **as required by the Bulk Sale Agreement**, filed these claims in this Court, they would be dismissed at the outset and subject to Rule 11 of the Federal Rules of Civil Procedure.  Indeed, as demonstrated by its December 4, 2017 filing, Trump is unable to defend against the claims of mismanagement, and, thus, Trump's only apparent defense is to deflect focus from the actual issues – Trump's mismanagement of the Trump Panama Hotel and the termination of its management agreement – and to create a circus by threatening Plaintiffs

(and others) with baseless fraud and conspiracy claims that entirely lack merit and have already been rejected by the Panamanian courts.  In other words, Trump is being Trump.

10.     Regardless of Trump's failed attempts at maintaining its flagging hotel brand, the simple fact remains: Trump cannot bring its claims against Plaintiffs in the Arbitration because there is no agreement to arbitrate in the Bulk Sale Agreement.  *See* Ex. D at pp. 43-69 (each of the claims Trump is attempting to assert against Plaintiffs arises out of or relates to the Bulk Sale Agreement).

11.     Plaintiffs, therefore, bring this action seeking a declaration that the Bulk Sale Agreement requires Trump to assert its claims against Plaintiffs – and any other claim arising from the Bulk Sale Agreement – in the state or federal courts of the State of New York and to enjoin Trump from asserting these claims in the ongoing Arbitration.

## THE PARTIES

12.     Plaintiff Ithaca Capital Investments I, S.A. is a Panamanian corporation, with its principal place of business at 2nd Floor, Humboldt Tower, East 53rd Street, Urb. Marbella, Panama City, Republic of Panama.  Ithaca I owns 202 units in the Trump Panama Hotel.

13.     Plaintiff Ithaca Capital Investments II, S.A. is a Panamanian corporation, with its principal place of business at 2nd Floor, Humboldt Tower, East 53rd Street, Urb. Marbella, Panama City, Republic of Panama.  Ithaca II owns the Hotel Amenities Unit in the Trump Panama Hotel.

14.     Plaintiff Orestes Fintiklis is a Cypriot citizen residing in Miami, Florida.

15.     Defendant Trump Panama Hotel Management LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, New York 10022.

16.     Defendant Trump International Hotels Management, LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, New York 10022.  Upon information and belief, Trump International Hotels Management, LLC assigned certain of its interests in the HMA to Trump Panama Hotel Management LLC.

## JURISDICTION AND VENUE

17.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* and Federal Rule of Civil Procedure 57, and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

18.     Pursuant to 28 U.S.C. § 1332(a)(2), this Court has subject matter jurisdiction over this dispute because it is between citizens of a state, and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Specifically, Trump seeks in the Arbitration the astronomical figure of "not less than $150,000,000 [One Hundred and Fifty Million U.S. Dollars]."  *See* Ex. D at ¶¶ 187, 219, *in passim*.

19.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' Complaint for declaratory judgment and injunctive relief necessarily presents questions of federal law because Trump's claims in the Arbitration against Plaintiffs include claims under the federal civil RICO statute, 18 U.S.C. § 1962(d).  *See* Ex. D at pp. 43-52.

20.     This Court has personal jurisdiction over Trump because Trump contractually consented to this Court's jurisdiction in the Bulk Sale Agreement.  *See* Ex. C at ¶ 9.  In addition, upon information and belief, Trump is domiciled in and/or conducts business in this District.

21.     Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this District because Trump resides in this District, and because Trump contractually consented to the venue of this judicial district in the Bulk Sale Agreement.  *See* Ex. C at ¶ 9.

## FACTUAL ALLEGATIONS

22.     The Trump Panama Hotel consists of 369 Hotel Units and the Hotel Amenities Unit, each of which are owned by individual unit owners.  To ensure effective management of the Hotel, these individual unit owners are beneficiaries in an entity known as the Hotel TOC Foundation (the "Foundation"), which in turn controls Hotel TOC – the claimant in the pending Arbitration.  The beneficiaries exercise their ownership rights with respect to the Hotel through these entities, whose representatives are then charged with effectuating their decisions and directives.

23.     On or about August 11, 2008, Hotel TOC and Trump entered into the HMA.

24.     Pursuant to the HMA, among other things, Trump was obligated to run Trump Panama Hotel as a profitable, top-rated luxury hotel.

25.     In exchange for properly managing the Trump Panama Hotel, Trump receives a management fee based on a percentage of the gross operating revenue from the Hotel and is entitled to receive an incentive fee if certain contractually prescribed benchmarks are met, as motivation for Trump to fully perform under the HMA.

26.     Trump has materially breached its contractual and fiduciary obligations arising from the HMA by, among numerous other things, failing to develop an effective sales and marketing strategy to target the proper market, encourage group and contract business to engage in the Hotel, and to drive occupancy.  The Hotel has steadily been losing market share and stands in last place among its peer luxury hotels in all the relevant metrics for success in the hotel industry.  This decline in occupancy has had and continues to have a direct impact on the Hotel's bottom line.  The resulting decline in revenues has been particularly precipitous in the past two years, which has left Hotel TOC to shoulder the financial burden of the Hotel on its own and to

the detriment of the owner beneficiaries, while Trump has lined its pockets with ill-gotten management fees.

A.   **Hotel TOC Commences an Arbitration Against Trump**

27.   On July 13, 2017 and August 27, 2017, among other instances, the beneficiaries, raised their concerns with Trump and implored it to cure its ongoing mismanagement of the Hotel.  Notwithstanding these pleas, Trump's mismanagement continued to the detriment of Hotel TOC's beneficiaries.

28.   Consequently, on October 3, 2017, Ithaca – the majority member of the beneficiaries – called a meeting of all the beneficiaries of the Foundation to discuss their investment in the Hotel.

29.   The meeting of the Beneficiaries of the Foundation took place on October 14, 2017, at which seventy-eight (78) percent of the beneficiaries were present in person or by proxy (the "October Meeting").  At the October Meeting, the beneficiaries discussed the continued financial decline of the Hotel and Trump's material violations of the terms and conditions of the HMA, as well as breaches of Trump's fiduciary duties to Hotel TOC and the beneficiaries. Based on the beneficiaries' consideration and discussion of those breaches, the beneficiaries unanimously decided to terminate Trump's management of the Hotel and to take all actions necessary in connection with such termination.

30.   Based on that decision, the beneficiaries also passed a resolution that authorized the Foundation to take all steps necessary to terminate Trump's management of the Trump Panama Hotel, and appointed Fintiklis to serve as the representative of the Foundation for that purpose, which included, among other things, commencing an arbitration before the ICC as provided under the HMA.

31.     Specifically, Section 9.1 of the HMA provides:

> Unless otherwise specifically provided for in this Agreement, all disputes, controversies, claims or disagreements arising out of or relating to the Agreement (singularly, a "Dispute", and collectively, "Disputes") shall be resolved in the following manner.
>
> 9.1.1   Either Party may submit the Dispute to the International Chamber of Commerce for binding arbitration under then existing ICC Commercial Arbitration Rules. …

*See* Ex. A.

32.     That same day, pursuant to the beneficiaries' directives and binding resolution, Hotel TOC commenced the Arbitration against Trump for, among other things, Trump's numerous breaches of its contractual and fiduciary duties arising under the HMA.  *See* Ex. C.

33.     The Request for Arbitration asserts twelve (12) claims against Trump, each of which arises directly out of the HMA and Trump's failure to satisfy its obligations under that agreement.   Hotel TOC seeks not less than $15 million in damages from Trump, and a declaration that Hotel TOC has the right to terminate Trump as Trump Panama Hotel's manager due to its gross mismanagement of the Hotel and breaches of its obligations under the HMA, among other things.

34.     Unlike Hotel TOC, Plaintiffs are not parties to the HMA, nor are they signatories to the HMA.  Consequently, Plaintiffs and Trump never agreed to arbitrate disputes between them arising from the HMA.

**B.     Trump Asserts Baseless Claims Relating to the Bulk Sale Agreement**

35.     On December 4, 2017, and as amended on December 5, 2017, Trump served Hotel TOC with its Answer and Counterclaims to the Request for Arbitration.   *See* Ex. D.

Trump's submission included lengthy third-party claims against various non-party respondents, including the Plaintiffs. *Id.*[2]

36.     What is immediately obvious from the first few pages of Trump's 73-page diatribe is that Trump's claims are focused on the Bulk Sale Agreement and the October Meeting – not the HMA, not Trump's mismanagement of the Hotel, and not Trump's (non-existent) efforts to remedy the harm that Trump has and is causing to the Hotel's owners.

37.     Instead, Trump asserts fanciful and conspiratorial claims about whether the Hotel's unit owners – the actual owners of the Hotel itself – had the right to meet on October 14, 2017 and decide to terminate and remove Trump for its objectively horrific mismanagement of the Panama Trump Hotel.

38.     However, Trump's decision to attack Plaintiffs and these third-parties for claims arising from the Bulk Sale Agreement, rather than addressing its mismanagement of the Hotel, is an act of self-sabotage that proves fatal to Trump's claims.   Indeed, Trump recognizes that Plaintiffs are not parties to the HMA, *see* Ex. D at ¶ 46, but nevertheless contends that Plaintiffs are subject to the Arbitration because:

> [Plaintiffs] Ithaca I and Ithaca II are parties [to the Bulk Sale Agreement]…. [Plaintiff] Fintiklis signed on behalf of Ithaca I and Ithaca II, as he dominates and controls such entities which are alleged to be his alter egos.   Exhibit A to the [Bulk Sale Agreement] enumerates and incorporates by reference all the Hotel-related agreements to which Ithaca I's purchase of the Hotel Units and Ithaca II's purchase of the Hotel Amenities Units were and remain subject, including the HMA.

> Ithaca I and Ithaca II upon signing the [Bulk Sale Agreement] expressly incorporated by reference the Hotel Agreements and the HMA, as well as the arbitration agreement set forth therein, and promised to not interfere with [Trump's] rights under the HMA.

*Id.* at ¶¶ 46-47.

---

[2] The ICC served Plaintiffs with the third-party claims on or after December 26, 2017.

39.     As this makes clear, Trump's basis for joining Plaintiffs to the Arbitration flows from the Bulk Sale Agreement.  Indeed, **all** of Trump's claims against Plaintiffs arise from or relate to the Bulk Sale Agreement, whether there has been a breach of that agreement, the interpretation of that agreement, the parties' respective rights under this agreement, and whether Plaintiffs had the right to vote their units to terminate Trump and the HMA based on the terms of that agreement.  *See* Ex. D at pp. 43-69.

### C.     The Bulk Sale Agreement Includes a Mandatory Forum Selection Clause

40.     Yet, the Bulk Sale Agreement, which Trump made central to its claims against Plaintiffs, contains a mandatory forum selection clause.   In relevant part, the Bulk Sale Agreement states:

> Each of the Parties … irrevocably submit and consent to the exclusive jurisdiction of the federal and state courts of the State of New York and agree that all suits, actions or other legal proceedings with respect to this Agreement shall be brought only in the State of New York.

*See* Ex. D at ¶ 9.

41.     The Bulk Sale Agreement also provides:

> Each of the Parties … waive and agree not to assert, by way of motion, as a defense or otherwise, in any such suit, action or proceedings any claim that it is not personally subject to the jurisdiction of the federal and state courts of the State of New York, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper, or that [the Bulk Sale Agreement] or the subject matter hereof may not be enforced in such courts[.]

*Id.*

42.     In addition, the Bulk Sale Agreement contains a merger clause, which provides:

> [The Bulk Sale Agreement] (including the recitals to this Agreement which are incorporated herein) sets forth the entire understanding and agreement of the Parties hereto any other agreements and understandings (written or oral) among the Parties

> on or prior to the date of this Agreement with respect to the matters set forth herein."

*Id.* at ¶ 12.

43.     The Bulk Sale Agreement is the full and final understanding between Trump and Plaintiffs, and it mandates that any dispute with respect to the Bulk Sale Agreement must be adjudicated in the federal or state courts of New York.   Because the Bulk Sale Agreement includes an exclusive, mandatory forum selection clause, it ***trumps*** Trump's decision to assert claims against the Plaintiffs in the Arbitration, regardless of the incorporation by reference of the HMA.   Consequently, Trump is precluded from pursuing its claims against Plaintiffs in the Arbitration.

### D.     Plaintiff Fintiklis Is Not the Alter Ego of Ithaca I and Ithaca II

44.     In addition to Trump's incorporation by reference theory, Trump alleges jurisdiction to join Fintiklis individually in the Arbitration on the grounds that, as the authorized representative of Hotel TOC and his alleged "dominat[ion] and control" over Hotel TOC, Hotel TOC is his alter ego.   *See* Ex. D at ¶ 50(i).

45.     Trump also contends that Ithaca I and Ithaca II are Fintiklis' alter egos, that he "derives substantial benefit" from those entities, that he "exploit[s] and benefit[s] from the agreement to which Ithaca I and Ithaca II are bound," and that he is, therefore, allegedly estopped from denying the ICC's jurisdiction over him.   *Id.* at ¶ 50(ii).   Due to the foregoing conclusory allegations, and because Fintiklis is allegedly "directly responsible for [the] damages" set forth in Trump's claims, Trump claims that it "may pierce the veil of Ithaca I and Ithaca II … to reach Fintiklis personally."   *Id.* at ¶ 50 (iii).

46.     Implicit in Trump's conclusory allegations is its recognition that Fintiklis is not a party to any agreement with Trump, much less any arbitration agreement.   To get around this

preclusive fact, Trump asserts ICC jurisdiction over Fintiklis through an alter ego theory, claiming without any facts that he is dominating and controlling Ithaca I and Ithaca II, and non-parties Hotel TOC and Foundation.

47.     This is not true, and Trump has not (and cannot) plead otherwise.  Fintiklis is an officer and director of Ithaca I and Ithaca II and is the authorized representative of Hotel TOC and Foundation, in essence an agent installed by the beneficiaries to carry out their directives. Fintiklis answers to the shareholders and investors of these entities, and they have been fully apprised of, and are in support of, all actions that he has taken to protect their investment relating to the Hotel.

48.     However, merely because Fintiklis volunteered to assume a role within Hotel TOC and the Foundation, and merely because he has some degree of control regarding those entities and Ithaca, this is insufficient standing alone to subject Fintiklis to the ICC's jurisdiction (or personal liability).  Fintiklis has never manifested an intention to be personally bound by the HMA or the Bulk Sale Agreement, which is further demonstrated by the filing of this Complaint, and Fintiklis has not derived a direct benefit from the HMA or the Bulk Sale Agreement.

49.     Unsurprisingly, Trump failed to allege any facts demonstrating that Fintiklis dominates and controls Ithaca, Hotel TOC, or the Foundation, much less the types of allegations required to establish an absence of corporate structure or formalities, and an intermingling of corporate finances.

50.     In other words, Fintiklis denies Trump's allegations that he is the alter ego of those entities, or is otherwise subject to the ICC's jurisdiction.  Because Fintiklis is not party to any arbitration agreement with Trump, and because Trump cannot satisfy any other basis to

impute the HMA's arbitration clause to Fintiklis, Trump is precluded from asserting its claims against Fintiklis in the Arbitration.

### E.      Trump Should Be Permanently Enjoined From Bring Claims Against Plaintiffs in Arbitration

51.      Trump's claims against Plaintiffs in the Arbitration should be stayed and Trump should be permanently enjoined from asserting them in any forum other than the federal or state courts of New York because there is no agreement to arbitrate these claims.

52.      Trump's claims and theories against Plaintiffs are specious, particularly in light of the fact that Trump does nothing more than assert a perfunctory denial of its gross mismanagement of the Hotel and relies, instead, on fanciful allegations of fraud and RICO violations that are premised on Plaintiffs' purported lack of authority stemming from the Bulk Sale Agreement.  However, because these claims all involve or relate to the Bulk Sale Agreement and its interpretation, these claims are subject to the Bulk Sale Agreement's exclusive, mandatory forum selection clause, which requires that any dispute with respect to that agreement be resolved in the federal or state courts of New York.  Even if Plaintiffs – who are neither parties nor signatories to the HMA – were somehow deemed to be bound by the HMA's arbitration clause, the Bulk Sale Agreement's forum selection clause trumps that arbitration provision.

53.      Additionally, Plaintiffs have not expressly or constructively agreed to arbitrate any of these claims, and Plaintiffs refuse to appear in the Arbitration, except to object to the ICC's jurisdiction.  Plaintiffs have not now or ever before manifested an intent to be bound by any provision of HMA's arbitration clause.

54.      With respect to Fintiklis, neither Ithaca I, nor Ithaca II (nor Hotel TOC or the Foundation) are his alter egos, and Trump has failed to – and cannot – plead any facts

demonstrating that those entities are his alter egos.   Therefore, Trump cannot establish ICC jurisdiction over Fintiklis.

55.     Consequently, Trump's claims against Plaintiffs are not arbitrable, and Trump should be enjoined from asserting these claims against them in the pending Arbitration.

## FIRST CAUSE OF ACTON
### For Declaratory Judgment that Ithaca I is not subject to ICC Jurisdiction
### (Ithaca I Against Defendants)

56.     Ithaca I repeats and realleges each and every allegation contained in Paragraphs 1 through 55 of this Complaint with the same force and effect as if set forth here in full.

57.     Ithaca I and Trump contractually agreed to bring any dispute with respect to the Bulk Sale Agreement exclusively in this Court or the state courts of the State of New York. Ithaca I's valid and binding agreement with Trump supersedes any right that Trump may have had to arbitrate these claims in the ICC pursuant to the HMA's arbitration clause.

58.     Ithaca I is compelled to seek relief in this Court because arbitration is a creature of contract, and an arbitration panel has no authority to decide whether the parties have submitted to it under the terms of their contract.   It is well-settled law that only a court can determine whether parties agreed to arbitrate and, under the terms of the Bulk Sale Agreement, the federal and state courts of the State of New York are the exclusive, mandatory fora.

59.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Ithaca I will suffer irreparable harm because it will (i) be deprived of its right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending itself in the arbitration proceeding, or risk an adverse

outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

60.     Declaratory relief from this Court will resolve this controversy.

61.     As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties.  Ithaca I therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure that Trump's claims are not arbitrable and that Trump must bring its claims, if at all, in the federal or state courts of the State of New York.

### SECOND CAUSE OF ACTION
**For Preliminary and Permanent Injunctive Relief**
**(Ithaca I Against Defendants)**

62.     Ithaca I repeats and realleges each and every allegation contained in Paragraphs 1 through 61 of this Complaint with the same force and effect as if set forth here in full.

63.     Trump has asserted claims for compensatory and punitive damages against Ithaca I in the Arbitration and, on information and belief, unless enjoined, will continue to pursue such claims.

64.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Ithaca I will suffer irreparable harm because it will (i) be deprived of its right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

65.     The balance of the equities weighs heavily in favor of an injunction.

66.     The public interest would be served by enjoining Trump from pursuing its meritless claims against Ithaca I in the Arbitration because, among other reasons, the Bulk Sale Agreement precludes arbitration of this dispute.

### THIRD CAUSE OF ACTON
### For Declaratory Judgment that Ithaca II is not subject to ICC Jurisdiction
### (Ithaca II against Defendants)

67.     Ithaca II repeats and realleges each and every allegation contained in Paragraphs 1 through 66 of this Complaint with the same force and effect as if set forth here in full.

68.     Ithaca II and Trump contractually agreed to bring any dispute with respect to the Bulk Sale Agreement exclusively in this Court or the state courts of the State of New York. Ithaca II's valid and binding agreement with Trump supersedes any right that Trump may have had to arbitrate these claims in the ICC pursuant to the HMA's arbitration clause.

69.     Ithaca II is compelled to seek relief in this Court because arbitration is a creature of contract, and an arbitration panel has no authority to decide whether the parties have submitted to it under the terms of their contract.  It is well-settled law that only a court can determine whether parties agreed to arbitrate and, under the terms of the Bulk Sale Agreement, the federal and state courts of the State of New York are the exclusive, mandatory fora.

70.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Ithaca II will suffer irreparable harm because it will (i) be deprived of its right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

71.     Declaratory relief from this Court will resolve this controversy.

72.     As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties.  Ithaca II therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure that Trump's claims are not arbitrable and that Trump must bring its claims, if at all, in the federal or state courts of the State of New York.

### FOURTH CAUSE OF ACTION
**For Preliminary and Permanent Injunctive Relief**
**(Ithaca II Against Defendants)**

73.     Ithaca II repeats and realleges each and every allegation contained in Paragraphs 1 through 72 of this Complaint with the same force and effect as if set forth here in full.

74.     Trump has asserted claims for compensatory and punitive damages against Ithaca II in the Arbitration and, on information and belief, unless enjoined, will continue to pursue such claims.

75.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Ithaca II will suffer irreparable harm because it will (i) be deprived of its right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

76.     The balance of the equities weighs heavily in favor of an injunction.

77.     The public interest would be served by enjoining Trump from pursuing its meritless claims against Ithaca II in the Arbitration because, among other reasons, the Bulk Sale Agreement precludes arbitration of this dispute.

## FIFTH CAUSE OF ACTON
### For Declaratory Judgment that Fintiklis is not subject to ICC Jurisdiction
### (Fintiklis Against Defendants)

78.     Fintiklis repeats and realleges each and every allegation contained in Paragraphs 1 through 77 of this Complaint with the same force and effect as if set forth here in full.

79.     Fintiklis is not bound by the HMA because he is not a party to that agreement, did not sign that agreement, and did not otherwise undertake any conduct to subject him to the HMA's arbitration clause.

80.     Fintiklis is not bound by the Bulk Sale Agreement because he is not a party to that agreement, but only executed the agreement as a representative of Ithaca, and did not evidence any intent to or otherwise undertake any conduct that could subject him to the HMA's arbitration clause.

81.     Trump's claims against Fintiklis relate entirely to the Bulk Sale Agreement, which provides for the exclusive jurisdiction of the state or federal courts of the State of New York.

82.     Fintiklis is not the alter ego of Ithaca I, Ithaca II, Hotel TOC, and/or the Foundation.

83.     Fintiklis is compelled to seek relief in this Court because arbitration is a creature of contract, and an arbitration panel has no authority to decide whether the parties have submitted to it under the terms of their contract.  It is well-settled law that only a court can determine whether parties agreed to arbitrate.

84.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Fintiklis will suffer irreparable harm because he will (i) be deprived of his right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute he has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending himself in the arbitration proceeding, or risk an adverse outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

85.     Declaratory relief from this Court will resolve this controversy.

86.     As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties.  Fintiklis therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure that Trump's claims are not arbitrable and that Trump must bring its claims, if at all, in the federal or state courts of the State of New York.

## SIXTH CAUSE OF ACTION
### For Preliminary and Permanent Injunctive Relief
### (Fintiklis Against Defendants)

87.     Fintiklis repeats and realleges each and every allegation contained in Paragraphs 1 through 86 of this Complaint with the same force and effect as if set forth here in full.

88.     Fintiklis should not be required to arbitrate Trump's claims against him because he never executed the HMA in his individual or representative capacity, and he never obligated himself to arbitrate claims against Trump by signing the HMA, or by any other conduct or action.  Also, Fintiklis is not the alter ego of Ithaca I, Ithaca II, Hotel TOC, and/or the Foundation.

89.     Nevertheless, Trump has asserted claims for compensatory and punitive damages against Fintiklis in the Arbitration and, on information and belief, unless enjoined, will continue to pursue such claims.

90.     As a matter of law, unless Trump is enjoined from pursuing its claims in the Arbitration, Fintiklis will suffer irreparable harm because he will (i) be deprived of his right to litigate this dispute in the forum in which the parties expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute he has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense in defending himself in the arbitration proceeding, or risk an adverse outcome in those proceedings.  Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

91.     The balance of the equities weighs heavily in favor of an injunction.

92.     The public interest would be served by enjoining Trump from pursuing its meritless claims against Fintiklis in the Arbitration because the Bulk Sale Agreement precludes arbitration of this dispute.

**WHEREFORE**, plaintiffs Ithaca Capital Investments I, S.A., Ithaca Capital Investments II, S.A., and Orestes Fintiklis respectfully demand that judgment be entered as follows:

a.      On the First Cause of Action, for a declaratory judgment, awarding Ithaca I a declaration that it is not required to arbitrate Trump's claims in the International Chamber of Commerce;

b.      On the Second Cause of Action, for preliminary and permanent injunctive relief, enjoining, barring and prohibiting Trump or its agents from prosecuting further proceedings against Ithaca I in the International Chamber of Commerce;

c.      On the Third Cause of Action, for a declaratory judgment, awarding Ithaca II a declaration that it is not required to arbitrate Trump's claims in the International Chamber of Commerce;

     d.       On the Fourth Cause of Action, for preliminary and permanent injunctive relief, enjoining, barring and prohibiting Trump or its agents from prosecuting further proceedings against Ithaca II in the International Chamber of Commerce;

     e.       On the Fifth Cause of Action, for a declaratory judgment, awarding Fintiklis a declaration that he is not required to arbitrate Trump's claims in the International Chamber of Commerce;

     f.       On the Sixth Cause of Action, for preliminary and permanent injunctive relief, enjoining, barring and prohibiting Trump or its agents from prosecuting further proceedings against Fintiklis in the International Chamber of Commerce;

     g.       On each cause of action, awarding Plaintiffs the costs and fees associated with the prosecution of this action, including reasonable attorney's fees, together with such other, further or different relief as this Court deems just and proper in the circumstances.

Dated:  New York, New York
        January 16, 2018

                                AKERMAN LLP

                          By:   */s Joshua D. Bernstein*
                                Joshua D. Bernstein, Esq.
                                Darryl R. Graham, Esq.
                                Kathleen M. Prystowsky, Esq.
                                Vanessa I. Garcia, Esq.
                                666 Fifth Avenue, 20th Floor
                                New York, New York 10103
                                Tel: (212) 880-3800

                                *Counsel to Plaintiffs Ithaca Capital Investments I, S.A., Ithaca Capital Investments II, S.A., and Orestes Fintiklis*