**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ITHACA CAPITAL INVESTMENTS I, S.A., ITHACA CAPITAL INVESTMENTS II, S.A., and ORESTES FINTIKLIS,<br><br>          Plaintiffs,<br><br>   v.<br><br>TRUMP PANAMA HOTEL MANAGEMENT LLC, and TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC,<br><br>          Defendants. | Civil Action No. 1:18-cv-390-ER |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO STAY ACTION PENDING
RESOLUTION OF RELATED ARBITRATION**

PRYOR CASHMAN LLP

Todd E. Soloway
Bryan T. Mohler
Marion R. Harris
7 Times Square
New York, NY 10036
(212) 421-4100
tsoloway@pryorcashman.com
bmohler@pryorcashman.com
mharris@pryorcashman.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... III

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 4

    A.    Hotel TOC, Controlled By Plaintiffs, Commences the ICC Arbitration. .............. 4

    B.    Plaintiffs Commence This Action and Obtain An Injunction Preventing Defendants From Pursuing Claims Against Them in the ICC Arbitration. ........... 5

    C.    Plaintiffs Completely Reverse Course, Arguing that this Action Should Be Stayed Because This Action Arises Out of the HMA ........................................... 6

    D.    The ICC Arbitration Still Has Not Commenced .................................................... 7

ARGUMENT ........................................................................................................ 7

I.    PLAINTIFFS FAIL TO ESTABLISH OVERLAPPING ISSUES THAT WILL BE FINALLY DETERMINED IN ARBITRATION ........................................................ 8

    A.    Defendants' Primary Counterclaims for Fraud and Breach of the Bulk Sale Consent Agreement Will Not Be Resolved Through Arbitration. ........................ 8

    B.    Plaintiffs' Speculation that the Arbitration "May" Have Preclusive Effect on Ancillary Claims in This Litigation is Also Insufficient to Warrant a Stay ....................................................................................................................... 10

        1.    The Preclusive Effect of the Arbitration, if Any, Cannot be Determined at This Early Juncture. .......................................................... 11

        2.    Plaintiffs Acknowledge a Substantial Likelihood the Arbitration Will Not Determine Any Common Issues. .............................................. 11

        3.    Plaintiffs Merely Speculate that the Arbitration Will Resolve Common Issues in this Action. ............................................................. 13

    C.    Plaintiffs' Argument Regarding "Double Recovery" of Damages is Meritless. ............................................................................................................. 14

II.    PLAINTIFFS LIKEWISE FAIL TO SATISFY THEIR "HEAVY BURDEN" TO SHOW A STAY IS WARRANTED .......................................................................... 15

    A.    Plaintiffs Have Hampered, and Will Continue to Hamper, the ICC Arbitration. ........................................................................................................... 16

B.      Plaintiffs Have Not Met Their Burden of Showing that the Arbitration
        Will Conclude Within a Reasonable Time. ........................................................17

C.      Defendants Will Be Severely Prejudiced By Further Delay of this
        Litigation. ..........................................................................................................19

D.      The Equities Weigh Heavily Against a Discretionary Stay of This Action. .........20

CONCLUSION ....................................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(s)**

*AIM Int'l Trading, L.L.C. v. Valcucine S.P.A.*,
   No. 02 CIV. 1363 (PKL), 2003 WL 21203503 (S.D.N.Y. May 22, 2003)............................15

*American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*,
   885 F. Supp. 499 (S.D.N.Y. 1995)....................................................................*passim*

*Burkybile v. Board of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*,
   411 F.3d 306 (2d Cir. 2005) ..........................................................................................11

*Chang v. Lin*,
   824 F.2d 219 (2d Cir. 1987) ...........................................................................................19

*Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*,
   942 F. Supp. 757 (D. Conn. 1996) .................................................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................................................11

*Donjon Marine Co. v. Water Quality Ins. Syndicate*,
   523 F. App'x 738 (2d Cir. 2013) .........................................................................7, 17, 19

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*,
   No. 97 CIV. 7102 (LAK), 1998 WL 314767 (S.D.N.Y. June 15, 1998) ......................10, 14

*Giles v. City of N.Y.*,
   41 F. Supp. 2d 308 (S.D.N.Y. 1999).............................................................................14

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
   808 F. Supp. 2d 552 (S.D.N.Y. 2011).............................................................................21

*Sierra Rutile Ltd. v. Katz*,
   937 F.2d 743 (2d Cir. 1991) .........................................................................................*passim*

*Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
   339 F.2d 440 (2d Cir. 1964) .....................................................................................8, 19

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   162 F.3d 724 (2d Cir. 1998) ..........................................................................................14

*Veleron Holding, B.V. v. Stanley*,
   No. 12 CIV. 5966 CM, 2014 WL 1569610 (S.D.N.Y. Apr. 16, 2014)..................................14

**CASES**                                                          **PAGE(s)**

*Wright v. SFX Entm't, Inc.*,
    No. 00 CIV 5354 SAS, 2001 WL 103433 (S.D.N.Y. Feb. 7, 2001)......................................20

## **ICC ARBITRATION RULES**

*https://cdn.iccwbo.org/content/uploads/sites/3/2017/03/icc-note-to-parties-and-arbitral-
    tribunals-on-the-conduct-of-arbitration.pdf.* ........................................................................19

*https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/* ........................18

Defendants Trump Panama Hotel Management LLC and Trump International Hotels Management, LLC ("Defendants") respectfully submit this Memorandum of Law in Opposition to the Motion to Stay Action Pending Resolution of Related Arbitration ("Motion" or "Mot.") filed by Plaintiffs Ithaca Capital Investments I, S.A. ("Ithaca I"), Ithaca Capital Investments II, S.A. ("Ithaca II"), and Orestes Fintiklis ("Fintiklis") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

On October 14, 2017, Hotel TOC, Inc. ("Hotel TOC"), a non-party controlled by Plaintiffs, commenced an arbitration against Defendants before the International Chamber of Commerce ("ICC"), alleging that Defendants breached a hotel management agreement ("HMA") governing the parties relationship in the management of the Trump International Hotel & Towers Panama in Panama City, Panama (the "Hotel").  On December 4, 2017, Defendants filed their Answer, Counterclaims, Request for Joinder and Third-Party Claims, seeking to add additional parties (including Plaintiffs) and assert claims against them for their participation in breach of the HMA by Hotel TOC.

On January 16, 2018, Plaintiffs commenced this action and sought a preliminary injunction preventing Defendants from pursuing claims against them in the ICC Arbitration contending that the forum selection clause of the Bulk Sale Consent Agreement, an agreement pursuant to which Defendants gave their required approvals for Plaintiffs to bulk purchase units at the Hotel, required that all disputes between the parties be resolved by litigation in courts in the State of New York. Plaintiffs argued that "there can be no dispute that [Defendants'] third-party claims against Plaintiffs arise entirely out of the Bulk Sale Agreement," and thus pursuant to that agreement's forum selection clause Defendants "ha[ve] every right to assert all of its claims in this Court."

On March 23, 2018, this Court accepted Plaintiffs' arguments and issued a preliminary injunction.  Thus, on April 23, 2018, Defendants answered the Complaint and asserted counterclaims against Plaintiffs—claims that were previously asserted in the ICC Arbitration against Plaintiffs but now, on account of the preliminary injunction, must now be pursued in this Court.

In response, Plaintiffs have completely reversed course.  They, seeking to stay this action in favor of the resolution of the ICC Arbitration to which Plaintiffs are no longer party, now argue that the resolution of the ICC Arbitration "may" resolve issues in this action.  This new position, by which Plaintiffs portray Defendants' counterclaims as arising out of the HMA is entirely inconsistent with Plaintiffs' prior arguments that the Bulk Sale Consent Agreement provided for the "*exclusive* jurisdiction" of courts of the State of New York to resolve disputes between the parties to this action.

Plaintiffs' inconsistent positions betray the true motive underlying this motion.  Rather than driven by a genuine belief that a stay will promote judicial and party efficiencies and avoid the risk of inconsistent judgments, Plaintiffs endeavor to indefinitely delay and prejudice Defendants' rights to pursue their claims related to the Bulk Sale Consent Agreement.  As Plaintiffs' lead counsel, Joshua Bernstein, Esq., indicated at the conclusion of the March 22, 2018 hearing, in response to the Court's query about what was next in the case, Plaintiffs "have the relief that we sought from this court, and I'm not sure there is anything further to do in this particular case." March 22, 2018 Hrg. Tr. at 76:9-11.  Now that Plaintiffs obtained a preliminary injunction, they have accomplished their objective and are content for this court action to be delayed indefinitely, impairing and prejudicing Defendants' rights.

While the Motion pays lip service to notions of judicial efficiency, Plaintiffs' proposed stay is manifestly inefficient.  The central claim in this action—Plaintiffs' breach of the Bulk Sale Consent Agreement—is admittedly unaffected by resolution of the ICC Arbitration and the scope of discovery related to such claim is broader than any of the claims that Plaintiffs now argue overlap with the ICC Arbitration.  Accordingly, this action will proceed regardless of the outcome of the ICC Arbitration and its scope will in no way be narrowed by such resolution.  For that reason alone, this Court should deny the stay and this action should proceed.

Plaintiffs' motion also fails to satisfy the Second Circuit's rigorous standard for granting a discretionary stay, and must also be denied on that basis.  *First*, without question, the ICC Arbitration will *not* resolve the central issues in this litigation because any arbitration award will not affect Defendants' right to proceed on their counterclaims against Plaintiffs relating to the Bulk Sale Consent Agreement, which are central to this case.

*Second*, Plaintiffs speculate about the possible preclusive effects of the arbitration with Hotel TOC, but they fail to establish that *any* common issues between the proceedings "will be" finally determined by the arbitration, as required to warrant a stay.  Plaintiffs even concede the arbitration will have *no impact* here if, as is likely, Defendants prevail in the arbitration.[1]  Plaintiffs cannot establish that the arbitration *will* narrow or resolve issues in this litigation.  There is simply no principle of judicial economy that would justify a stay.

*Finally*, Plaintiffs have not met their "heavy burden" of establishing a stay is warranted.  To begin, Plaintiffs cannot show the arbitration will conclude within a reasonable time.  It has been more than *ten months* since Plaintiffs initiated arbitration against Defendants before the

---

[1] *See* Answer with Counterclaims, Ex. 2 (ECF No. 38-1, at 103-135), Mar. 27 Emergency Arbitration Order in Hotel TOC Arbitration at 23 ("I have accepted that Hotel TOC did in fact breach the HMA as submitted by [Defendants].  I have also given effect to that breach by enjoining specific steps that might otherwise be taken by Hotel TOC").

International Chamber of Commerce, and yet no arbitral tribunal has been confirmed, numerous joinder and arbitrator selection issues remain, and the parties are no closer to the *commencement* of arbitration proceedings, let alone a final conclusion.  Plaintiff Fintiklis has hampered the progress of arbitration by circumventing the ICC's jurisdiction and seeking provisional relief from Panamanian courts, and by executing an unlawful "self-help" removal of Defendants from the Hotel.  And a stay will severely prejudice Defendants' rights to prosecute their claims against Plaintiffs in this case, particularly since the international nature of this dispute gives rise to additional risks that evidence may grow stale or become unavailable.

This Court should deny Plaintiffs' motion for a stay in its entirety.

## FACTUAL BACKGROUND

### A.      Hotel TOC, Controlled By Plaintiffs, Commences the ICC Arbitration.

Hotel TOC is the owner organization for the Hotel, as well as the owner of the common spaces of the Hotel.  Hotel TOC is controlled by Plaintiffs, the owners of 202 hotel and 13 hotel amenities units in the Hotel.  Defendants are the managers of the Hotel pursuant to the HMA until 5, 2018, when they were improperly ousted as managers by Plaintiffs and Hotel TOC.    Hotel TOC and Defendants are parties to the HMA that governed the management of the Hotel.  On October 14, 2017, Hotel TOC commenced an arbitration before the ICC against Defendants, alleging, among other things, breach of the HMA governing Defendants' management of the Hotel.  The HMA contains an arbitration provision stating that all disputes arising out of the HMA are to be resolved by binding arbitration before the ICC.

Defendants filed their Answer, Counterclaims, Request for Joinder and Third-Party Claims on December 4, 2017, asserting counterclaims against Hotel TOC relating to its breach of the HMA, as well as claims against the Plaintiffs (among others) for fraud, tortious interference and

for breach of the Bulk Sale Consent Agreement between plaintiffs Ithaca I and Ithaca II and Defendants.[2]  Plaintiffs thereafter objected to the jurisdiction of the ICC and filed a plea pursuant to Article 6(3) of the ICC Arbitration Rules, arguing that they were not bound to arbitrate with Defendants before the ICC.

> **B.      Plaintiffs Commence This Action and Obtain An Injunction Preventing Defendants From Pursuing Claims Against Them in the ICC Arbitration.**

On January 16, 2018, Plaintiffs commenced the instant action seeking a declaratory judgment and a permanent injunction to stop Defendants from pursuing claims against them in arbitration.  Plaintiffs' claims are based on a forum selection clause in a Bulk Sale Consent Agreement entered into by defendants Ithaca I and Ithaca II with plaintiff Trump Panama Hotel Management, LLC, which designates the federal and state courts of the State of New York as the "exclusive jurisdiction" for any actions with respect to that agreement.  Plaintiffs simultaneously moved for a preliminary injunction, arguing that the Bulk Sale Consent Agreement's forum selection clause barred Defendants' claims asserted in the ICC Arbitration because:

- "[Defendants'] dispute wholly relates to the Bulk Sale Agreement";

- "[Defendants] cannot credibly argue that its claims against Plaintiffs arise from or relate to the HMA";

- "[Defendants' dispute respecting the Bulk Sale Agreement is subject to the exclusive jurisdiction of the New York's courts";

- "[T]here can be no dispute that [Defendants'] third-party claims against Plaintiffs arise entirely out of the Bulk Sale Agreement"; and

- Defendants "ha[ve] every right to assert all of its claims in this Court."

---

[2] The Defendants subsequently amended their Answer, Counterclaims, Request for Joinder and Third-Party Claims on March 6, 2018.  *See* Declaration of Bryan T. Mohler ("Mohler Decl."), Exhibit A.

On March 26, 2018, this Court credited Plaintiffs' arguments, finding that Defendants' counterclaims "aris[e] under" the Bulk Sale Consent Agreement, and granted a preliminary injunction against Defendants prohibiting them from pursuing claims in arbitration against Plaintiffs.[3]

Following the entry of a preliminary injunction, on April 23, 2018, Defendants answered the Complaint in this action and asserted counterclaims against Plaintiffs for (i) fraud arising out of an October 14, 2017 meeting; (ii) fraudulent inducement with regards to the Bulk Sale Consent Agreement; (iii) fraudulent concealment with regards to the Bulk Sale Consent Agreement; (iv) tortious interference with the HMA; (v) breach of the Bulk Sale Consent Agreement; (vi) tortious interference with the Lundgren Settlement Agreement; (vii) declaratory judgment; and (viii) attorneys' fees pursuant to the Bulk Sale Consent Agreement.

### C.   Plaintiffs Completely Reverse Course, Arguing that this Action Should Be Stayed Because This Action Arises Out of the HMA

After successfully obtaining a preliminary injunction by arguing, among other things, that Defendants "ha[ve] every right to assert all of its claims [as counterclaims] in this Court," Plaintiffs subsequently sought leave to move (i) to dismiss certain of those counterclaims (namely, those for fraud, fraudulent inducement, fraudulent concealment and tortious interference); and (ii) for a stay of proceedings in favor of the ICC arbitration.

To support their stay motion, Plaintiffs now—in a reversal of the position taken by Plaintiffs and credited by this Court in granting a preliminary injunction—argue that the parties should cede to the ICC the right to determine issues pending here notwithstanding the "exclusive

---

[3] On June 14, 2018, the International Court of Arbitration of the ICC adjudicated the parties' Article 6(3) pleas, and concluded (on a *prima facie* basis and in disagreement with this Court) that Plaintiffs Ithaca I and Ithaca II were subject to an agreement to arbitrate before the ICC.

jurisdiction" forum selection clause in the Bulk Sale Consent Agreement.  Plaintiffs now contend that this "action arises out of" the HMA (a position Plaintiffs previously declared to be not credible), and therefore that the ICC Arbitration "may" resolve *some* claims in this proceeding. Setting aside the gamesmanship revealed by these inconsistent positions, this speculative argument is plainly insufficient to meet the "heavy burden" required to obtain a stay.  Additionally, a stay is unwarranted because there are no assurances that the ICC arbitration will advance at any pace, let alone a reasonable one, further underscoring the prejudice that will be wrought on Defendants should a stay of proceedings be granted.

### D.  The ICC Arbitration Still Has Not Commenced

Meanwhile, the ICC Arbitration, originally filed in October 2017, has not commenced. Following the ICC's decision on joinder of additional parties on June 14, 2018, certain third parties filed requests for reconsideration, which the ICC subsequently denied on July 25, 2018.  Following that denial, the same third-party respondents filed an amended responsive pleading and a request to join 15 additional "fourth-party respondents" in the proceedings which, under the ICC rules, requires the adjudication of joinder by the International Court of Arbitration—a process which, with respect to the parties sought to be joined by Defendants, took over 7 months to resolve.  Until the joinder of all parties identified has been resolved, the ICC will not confirm arbitrators and the proceedings will not proceed to any resolution on their merits.

### ARGUMENT

While a district court has inherent discretionary authority to stay—or not stay—an action involving nonparties to a pending arbitration, the Second Circuit has held that the party seeking a stay "bears a *heavy burden* of showing *necessity* for the stay."  *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (emphasis added; citation omitted); *see also Donjon Marine Co. v. Water*

*Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013) (denying stay); *Nederlandse Erts–*
*Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964).

To warrant a stay, the moving party must first establish that "there are issues common to
the arbitration and the court proceeding," and that "those issues *will be* finally determined by
arbitration." *American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502
(S.D.N.Y. 1995) (emphasis added) (denying stay); *see also Sierra Rutile Ltd.*, 937 F.2d at 750
(dismissing appeal for lack of appellate jurisdiction, but holding district court should not have
granted stay of proceedings pending arbitration).  The moving party must then establish "that [it
has] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the
arbitration may be expected to conclude within a reasonable time, and that such delay as may occur
will not work undue hardship." *Nederlandse Erts*, 339 F.2d at 442 (footnote omitted); *Donjon*
*Marine Co.*, 523 Fed. App'x at 740.

Plaintiffs fail to carry their "heavy burden of showing necessity for the stay" of this action
pending the outcome of the Arbitration.  *Sierra Rutile*, 937 F.2d at 750 (citation omitted).
Accordingly, no stay is warranted and the Court should deny the Motion.

## I.    PLAINTIFFS FAIL TO ESTABLISH OVERLAPPING ISSUES THAT WILL BE FINALLY DETERMINED IN ARBITRATION

The Court should deny Plaintiffs' request for a stay because Plaintiffs fail to show that the
Arbitration will finally determine *any* common issues between the Arbitration and this action.

### A.    Defendants' Primary Counterclaims for Fraud and Breach of the Bulk Sale Consent Agreement Will Not Be Resolved Through Arbitration.

The Arbitration—regardless of its outcome—will *not* obviate the need to proceed with this
court action because Defendants' primary counterclaims against Plaintiffs for fraud and breach of
contract *cannot* be "finally determined" in arbitration.  The Second Circuit has held that even if an
arbitration might resolve some issues in a court action, where, as here, there exists "additional,

significant claims in the action at bar that are not cognizable in arbitration," a stay is unwarranted. *Sierra Rutile Ltd.*, 937 F.2d at 750.  Plaintiffs' motion should therefore be denied.

Plaintiffs seek to depict "direct overlap" between the Arbitration and this case and argue the Arbitration may "entirely resolve" it.  Mot. at 7-8; *accord* June 22, 2018 Hrg. Tr. at 12-17-19 ("Those claims *may very well* have preclusive effect on the Trump defendants and *may* resolve entirely or narrow significant[] issues and claims to be decided here") (emphasis added).  But that is impossible.  As Plaintiffs themselves argued in securing a preliminary injunction against Defendants, Defendants' central counterclaims in this action—for fraud, fraudulent inducement, fraudulent concealment, and breach of contract (First, Second, Third, and Fifth counterclaims) relating to the Bulk Sale Consent Agreement entered into by Ithaca I and Ithaca II with Trump Panama Hotel Management, LLC—have nothing to do with Hotel TOC, Inc.'s breach of the HMA which is the subject of the ICC Arbitration.  (ECF No. 38, at 39-46.)  These counterclaims, which form the very heart of this case, will in no way be adjudicated in the ICC Arbitration and are distinct from any claims relating to the dispute with Hotel TOC over the HMA.  As only Ithaca I and Ithaca II were party to the Bulk Sale Consent Agreement, and as they are not participating in the ICC Arbitration, Defendants' central counterclaims must be resolved in this litigation and not in Arbitration. [4]  Indeed, Plaintiffs have repeatedly argued that Defendants' counterclaims involving the Bulk Sale Consent Agreement do not relate to the HMA or the Arbitration, that these

---

[4] The conclusion that these counterclaims cannot be "finally determined" in Arbitration is consistent with this Court's order granting a preliminary injunction.  The Court's Order enjoined Defendants from pursuing claims against Plaintiffs in the Arbitration based on the Bulk Sale Consent Agreement's forum selection clause.  ECF No. 36.

counterclaims relate solely to the Bulk Sale Consent Agreement, and thus, must be resolved only by this Court.[5]

The Second Circuit's decision in *Sierra Rutile* requires denial of a stay here.  In that case, the Second Circuit held that the district court should have denied a request for a stay pending the outcome of a related arbitration because, among other reasons, significant non-arbitrable claims existed in the court action.  *Sierra Rutile Ltd.*, 937 F.2d at 750-51.  The Court reasoned that while the arbitration *might* resolve *some* issues in the court action, this fact could not justify a stay, particularly when the plaintiff asserted "additional, significant claims in the action at bar that are not cognizable in arbitration."  *Id.* at 750.

Like *Sierra Rutile*, here it is undisputed that Defendants' primary counterclaims relating to the Bulk Sale Consent Agreement will *not* be resolved in Arbitration and must be litigated in court regardless of the Arbitration's outcome.  No stay therefore is warranted or appropriate.  *See also E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, No. 97 CIV. 7102 (LAK), 1998 WL 314767, at *6 (S.D.N.Y. June 15, 1998) (denying stay where "not a certainty" the arbitration would resolve "all" of plaintiff's claims, and finding "issues unique to the other defendants would remain").

**B.    Plaintiffs' Speculation that the Arbitration "May" Have Preclusive Effect on Ancillary Claims in This Litigation is Also Insufficient to Warrant a Stay.**

Plaintiffs further argue that the Court should stay this entire action because some of Defendants' ancillary counterclaims (for tortious interference and a declaratory judgment) and the issue of damages "may" possibly be resolved by the Arbitration because of collateral estoppel.

---

[5] *See, e.g.,* Plaintiffs' Mem. of Law in Support of Mot. for Preliminary Injunction, ECF No. 8 at 9-12, 14, 24, where Plaintiffs argued: "[Defendants'] dispute wholly relates to the Bulk Sale Agreement"; "[Defendants] cannot credibly argue that its claims against Plaintiffs arise from or relate to the HMA"; "[Defendants' dispute respecting the Bulk Sale Agreement is subject to the exclusive jurisdiction of the New York's courts"; "[T]here can be no dispute that [Defendants'] third-party claims against Plaintiffs arise entirely out of the Bulk Sale Agreement"; and Defendants "ha[ve] every right to assert all of its claims in this Court."

Mot. at 7.  But courts in this District require the party seeking a stay to establish the existence of common issues between the arbitration and the court action that "*will be* finally determined by arbitration."  *American Shipping Line, Inc.*, 885 F. Supp. at 502 (emphasis added).  Accordingly, even if Defendants' primary counterclaims relating to the Bulk Sale Consent Agreement could be resolved in the ICC Arbitration (which they cannot), Plaintiffs' speculation about the potential for a limited preclusive effect of the Arbitration is insufficient to warrant a stay of this action.

        1.      <u>The Preclusive Effect of the Arbitration, if Any, Cannot be Determined at This Early Juncture.</u>

To begin with, courts generally do not address the preclusive effect of an arbitration on a court action until after the arbitration has concluded.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985).  The Supreme Court has stated that "the preclusive effect of arbitration proceedings is significantly less well settled than the lower court opinions might suggest, and that the consequences of this misconception has been the formulation of unnecessarily contorted procedures."  *Id*. at 222; *see also Burkybile v. Board of Educ. of Hastings-On-Hudson Union Free Sch. Dist*., 411 F.3d 306, 310 (2d Cir. 2005) (noting that "the preclusive effect of arbitrations is a difficult and complex issue").  At this point, before the parties to the Arbitration have selected a panel of arbitrators or established Terms of Reference with the ICC on the issues to be decided in arbitration, it is simply impossible know what, if any, preclusive effect the outcome of the Arbitration may have on this action.  Thus, for purposes of Plaintiffs' Motion, Plaintiffs' arguments are, at best, pure speculation and fall well short of their "heavy burden" to justify a stay of proceedings.

        2.      <u>Plaintiffs Acknowledge a Substantial Likelihood the Arbitration Will Not Determine Any Common Issues.</u>

Even if this Court were willing to consider the preclusive effect of the Arbitration before it has begun, Plaintiffs themselves acknowledge a substantial likelihood the Arbitration will have

*no impact* on this case. Plaintiffs concede that the Arbitration can, at best, have only "one-way" preclusive effect—that the Arbitration will determine common issues *only if* Hotel TOC prevails against Defendants. *See* ECF No. 51, June 22 Hrg. Tr at 12:14-19, 14:4-17 ("Those claims may very well have preclusive effect on the Trump defendants"; "If they lose in the ICC … then there is collateral estoppel against [the Trump defendants]…."); Mot. at 9 ("[I]f Trump loses its claims in the Arbitration … then Trump would be collaterally estopped from asserting those claims….").

If, on the other hand, *Defendants* prevail against Hotel TOC, Plaintiffs will argue that they are *not bound* by any arbitral award because they were not parties to the ICC Arbitration and the arbitrators will not have ruled directly on Plaintiffs' liability. *See id.* Further undermining Plaintiffs' position, the developments in the ICC Arbitration indicate that Defendants have established a likelihood of success on the merits of their claims. *See* n.6 *infra*.

When a party seeking a stay pending an arbitration has suggested that it will not be bound by the results of that arbitration, it is inappropriate for the district court to grant a stay pending the arbitration. *See Sierra Rutile Ltd.*, 937 F.2d at 750 (denying stay when the non-parties to the arbitration "have asserted continuously that they will not be bound by any arbitral resolution."). In such circumstances, "[i]t makes no sense to stay proceedings pending the end of the arbitration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in the federal courts anyway." *American Shipping Line, Inc.*, 885 F. Supp. at 502.

Plaintiffs contend that if Defendants prevail in the ICC Arbitration, the resulting award will not be determinative of any common issues in this action, and the parties would have to fully relitigate all issues before the district court, including whether Hotel TOC breached the HMA. Staying this action would therefore not serve the interest of judicial economy and would only unnecessarily delay these proceedings, to the detriment of Defendants. *See American Shipping*

*Line, Inc.*, 885 F. Supp. at 503 (denying stay and holding that it was "disingenuous" for the moving party to seek a stay based on judicial economy "when judicial economy would have been better served had they submitted their claims to arbitration."). What Plaintiffs are seeking with their Motion is to guarantee to themselves an option—to argue that the ICC Arbitration award binds Defendants if resolved in Plaintiffs' favor, but to re-litigate the same issue if it is resolved in Defendants' favor (with the benefit of all prior arguments on the issue).[6] Plaintiffs' desired option is not a permissible basis for this Court to grant a stay of proceedings and, accordingly, Plaintiffs' Motion should be denied.

### 3.   Plaintiffs Merely Speculate that the Arbitration Will Resolve Common Issues in this Action.

Moreover, contrary to Plaintiffs' speculative arguments, even if Hotel TOC were (improbably) to prevail in the Arbitration on whether it breached the HMA,[7] there are many grounds by which the ICC Arbitration will not resolve the counterclaims identified by Plaintiffs in support of their Motion (Defendants' tortious interference and declaratory judgment counterclaims against Plaintiffs).

For example, for collateral estoppel to potentially apply to an arbitration award, it is still necessary for the court to examine, among other things, whether identical issues were decided,

---

[6] While Plaintiffs are no longer parties in the ICC Arbitration, it is no secret that the Plaintiffs control the Claimant in the Arbitration. Indeed, Plaintiffs' counsel has repeatedly indicated as much during conferences with the Court. *See* June 22, 2018 Hrg. Tr. at 12:14-15 (Ms. Prystowsky, Plaintiffs' counsel: "Our position is merely let *us* proceed with the Hotel TOC arbitration.") (emphasis added).

[7] Such a result is unlikely, given that two arbitrators reviewing the circumstances of Defendants' ouster from the Hotel have concluded that Defendants (and their affiliates) have established a likelihood of success on the merits of their claims. *See* Answer, Exhibit 2 (ECF No. 38-1, at 103-135), Mar. 27 Emergency Arbitration Order in Hotel TOC Arbitration at 23 ("I have accepted that Hotel TOC did in fact breach the HMA as submitted by [Defendants]. I have also given effect to that breach by enjoining specific steps that might otherwise be taken by Hotel TOC"); *See* Mohler Decl., Ex. B, Mar. 21, 2018 Emergency Arbitration Order in PH TOC Arbitration ¶ 85 ("Therefore, as regards the underlying claims related to the emergency measures sought, triggered by the Request for Arbitration in case 23462/MK, there is a probable success on the merits, since there is indeed an apparent breach of the Non-Interference Clause").

whether there was factual identity on the claims presented, whether different legal standards governed the resolution, whether there was full and fair opportunity to litigate, and whether the arbitration panel issued an award with the requisite detail for application of collateral estoppel. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998); *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1999). Moreover, issue preclusion may not apply if the award was rendered under circumstances where Defendants were not entitled to obtain documents, question key witnesses, or to take appropriate discovery. *See Veleron Holding, B.V. v. Stanley*, No. 12 CIV. 5966 CM, 2014 WL 1569610, at *13 (S.D.N.Y. Apr. 16, 2014) (holding that collateral estoppel did not apply based on arbitration award where scope of discovery in arbitration was far more limited than that available in court).

District courts generally deny requests for a stay when, as here, "it is not at all clear that the arbitration will finally decide even those issues common to both the arbitration and the court proceedings." *American Shipping Line, Inc.*, 885 F. Supp. at 502; *see also E.G.L. Gem Lab Ltd.*, 1998 WL 314767, at *6 (denying stay where "not a certainty" that arbitration would resolve "all" claims). Plaintiffs offer nothing but speculation about possible preclusive effects of the Arbitration and have failed to establish that any common issues between the proceedings "will be" finally determined by the Arbitration.

### C.      Plaintiffs' Argument Regarding "Double Recovery" of Damages is Meritless.

Finally, as a throw-away argument, Plaintiffs contend that the Court should grant a stay because Defendants seek a "double recovery" because there are overlapping issues of damages in the ICC Arbitration and this court action. This argument is meritless.

In the ICC Arbitration, Defendants seek damages "in an amount to be established at the hearing of this matter, but in no event less than $3,000,000." (Soloway Decl., Ex. A at 69-72.) In this action, Defendants have asserted counterclaims for damages against Plaintiffs "in an amount

14

to be determined at trial, but in no event less than $3,000,000." (ECF No. 38 at 49-50.)  Plaintiffs contend these references to a minimum amount of damages Defendants have suffered means a stay is necessary, but they fail to explain this contention in any way.  Nor do Plaintiffs provide any factual support for their claim that "even if Trump prevails in the Arbitration, there is a very significant possibility Trump will be awarded <u>no</u> damages."  Mot. as 10.

In any event, that the outcome of an arbitration proceeding may have some impact on the amount of damages in related litigation is *not* a basis to grant a stay of the court action.  *See AIM Int'l Trading, L.L.C. v. Valcuine S.P.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at *12 (S.D.N.Y. May 22, 2003) (denying stay where the arbitration "outcome might have some effect on the amount of damages," and finding that the "arbitration resolution is not necessary for any of the claims to proceed, especially at the discovery stage.").

In sum, Plaintiffs come nowhere near establishing the existence of overlapping issues that will be finally determined in arbitration and warrant a stay of this action.  And, in any case, Defendants will be entitled to move forward with counterclaims relating to the Bulk Sale Consent Agreement.  To wait until the Arbitration has concluded will not serve any interest of judicial economy and will only needlessly delay Defendants' right to seek redress in this Court.

## II.    PLAINTIFFS LIKEWISE FAIL TO SATISFY THEIR "HEAVY BURDEN" TO SHOW A STAY IS WARRANTED

As discussed above, Plaintiffs cannot show overlapping issues that will be finally determined in Arbitration.  But even if Plaintiffs could, the Court should still deny the Motion because Plaintiffs cannot meet their "heavy burden" on a motion to stay to establish: (a) they will not take any steps to hamper the Arbitration proceeding; (b) the Arbitration may be expected to conclude within a reasonable time; and (c) a stay will not prejudice Defendants. *Sierra Rutile*, 937 F.2d at 750.

15

### A. Plaintiffs Have Hampered, and Will Continue to Hamper, the ICC Arbitration.

Plaintiffs seek to assure the Court that they have not and will not hamper the progress of the ICC Arbitration. These empty assurances are simply false. Plaintiffs have repeatedly undermined the Arbitration proceedings as a litigation tactic.

*First*, Plaintiffs have already intentionally hampered the Arbitration by circumventing the ICC's jurisdiction when they began Panamanian court proceedings in violation of the HMA. In March 2018, plaintiff Fintiklis (who controls Claimant Hotel TOC, Inc.) bypassed the ICC Arbitration and the ICC's jurisdiction by applying to the Panama Courts for an attachment of the administration of the Hotel. Plaintiffs concealed the existence of the Arbitration from the Panamanian court to wrest control of the Hotel, in violation of the HMA. An emergency arbitrator determined that Hotel TOC, Inc., under the direction of Fintiklis, breached the HMA by resorting to a Panamanian court for that provisional relief—relief that, under the HMA, was exclusively available before the ICC or New York courts. (Answer with Counterclaims, Ex. 2 (ECF No. 38-1, at 103-135), ¶¶ 124-129 (Emergency Order of Joel Richler).) In the face of their prior acts, Plaintiffs cannot now credibly claim non-interference with the progress of the Arbitration.

*Second*, plaintiff Fintiklis also obstructed the Arbitration when he executed an unlawful "self-help" removal of Defendants from the Hotel. After the Arbitration was initiated in October 2017, the dispute over control of the Hotel should have been resolved in Arbitration under the HMA's dispute resolution procedures. Instead, in February and March 2018, Fintiklis staged an unlawful takeover of the Hotel by seeking to physically remove Defendants from the property and assume control of their financial and IT infrastructure. (ECF No. 38, ¶¶ 85-98.) Fintiklis' conduct can only be viewed as an attempt to deprive Defendants of the resources and information necessary to prosecute the ICC Arbitration against Hotel TOC.

16

Based on Fintiklis' prior unlawful conduct, which has already materially hampered the progress of the Arbitration, Plaintiffs cannot meet their burden to establish that they will not impede the Arbitration.  They have already done so.  This failure is fatal to Plaintiffs' Motion.  *See Donjon Marine Co.*, 523 F. App'x at 740 (affirming denial of motion to stay where movant failed to carry its heavy burden to show that the arbitration would likely conclude within a reasonable time); *Sierra Rutile Ltd.*, 937 F.2d at 750 (dismissing appeal, but finding that district courts must narrowly tailor any stays and reasoning that the district court erred by "refus[ing] to exercise jurisdiction over the parties and issues in this case" where movant failed to demonstrate arbitration would conclude within a reasonable time).

### B.   Plaintiffs Have Not Met Their Burden of Showing that the Arbitration Will Conclude Within a Reasonable Time.

The Court should also deny Plaintiffs' stay motion because Plaintiffs have failed to meet their "heavy burden" of establishing that the arbitration may be expected to conclude within a reasonable time.  *See Donjon Marine Co.*, 523 F. App'x at 740 (affirming denial of stay).  This failure alone also requires denial of Plaintiffs' Motion.

The initial Request for Arbitration was filed over ten months ago on October 14, 2017.  To date, however, the parties are no closer to the *start* of the Arbitration, much less its conclusion.  Most strikingly, after ten months, an arbitral tribunal has not even been constituted.  None of the three arbitrators who will make up the arbitral panel in the Arbitration have been confirmed.  There have been no Terms of Reference prepared, no case management conference, no hearing dates established, and thus no procedural rules for the arbitration have been decided upon.  At this point, it is simply impossible to predict when the Arbitration may reasonably be expected to conclude.

Also unresolved are ongoing disputes over joinder of additional parties to the Arbitration.  As recently as August 2, 2018, one of Plaintiffs' alleged co-conspirators, Owners Meeting of the

PH TOC, has sought to join *fifteen* additional parties to the Arbitration.  These efforts to join additional individual parties will no doubt require more months for resolution, as any joined parties will have rights under ICC procedures to answer and challenge any improper assertion of jurisdiction over them by the ICC, and to weigh in on the appointment of any proposed arbitrators. While Plaintiffs portray commencement of the Arbitration proceeding as imminent,[8] it is beyond clear Plaintiffs cannot possibly give this Court any requisite "assurance" that the Arbitration will be concluded within a reasonable timeframe.

Plaintiffs argue that the HMA's arbitration provision shows that the ICC Arbitration will conclude expeditiously.  This argument is meritless.  First, as discussed above, substantial delay is *certain* to occur in commencing Arbitration proceedings before a panel of arbitrators, as many joinder and arbitrator selection issues remain pending.  Second, based on the ICC's administration of the proceedings to date—where over ten months have passed without appointment of a panel of arbitrators—there is simply *no indication* that the ICC, or the arbitration tribunal, once constituted, will adhere to the HMA's direction to establish a schedule that will yield a conclusion within 120 days.  The HMA's timeframes have been repeatedly ignored, and, in any event, under the ICC Arbitration Rules, the timeframe for resolution will ultimately be established by the arbitral tribunal pursuant to its procedural timetable.  *See* ICC Arbitration Rules, Article 24[9]; *see also* ICC

---

[8] Plaintiffs have repeatedly informed the Court that the ICC is "ready" to constitute the arbitration tribunal and will do so "soon," including at the pre-motion conference on June 22, 2018 (*see* June 22 Hrg. Tr. at 6:3-20), and again in their July 20, 2018 Motion (ECF No. 50-11 at 12).  However, as evidenced by the fact that, as of the filing of Defendants' memorandum of law nearly two months after the pre-motion conference, the ICC Arbitration is no further along, there is simply no assurance that the ICC Arbitration will conclude within a reasonable time.  All available evidence indicates precisely the opposite, a conclusion recognized by Emergency Arbitrator Joel Richler as early as March 2018 in the Arbitration.  *See* Answer with Counterclaims, Ex. 2 (ECF No. 38-1, at 103-135), ¶ 37 ("I repeat in this regard that there is no indication that constitution of the arbitral tribunal is imminent").

[9] *Available at*: https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/

Note to the Parties and Arbitral Tribunals on the Conduct of Arbitration ¶ 65[10].  In the face of these hard facts, Plaintiffs offer no more than unwarranted speculation that the Arbitration will conclude within a reasonable timeframe.  Certainly, it will not.

In short, Plaintiffs fail to meet the Second Circuit's exacting standard of "establishing" that the Arbitration will conclude expeditiously.  *Donjon Marine Co.*, 523 F. App'x at 740.  Thus, the Court should deny Plaintiffs' Motion for this additional reason.

### C.   Defendants Will Be Severely Prejudiced By Further Delay of this Litigation.

Plaintiffs must also establish that a stay will not impose an "undue hardship" on Defendants.  *See Nederlandse*, 339 F.2d at 442.  Plaintiffs cannot meet this burden, as Defendants will be significantly prejudiced by a stay.

Defendants seek to promptly vindicate their rights against Plaintiffs in this action.  Prejudice from further delay would be grave.  Again, while Plaintiffs attempt to portray resolution of the ICC Arbitration as imminent, Defendants have waited many months and are no closer to its commencement.  If Defendants must wait even longer to prosecute their claims against these Plaintiffs, evidence will be lost, witnesses' recollections will fade, and Plaintiffs' assets may dissipate.  These risks are even more acute given the international nature of this dispute, where plaintiff Fintiklis is a Cypriot citizen and plaintiffs Ithaca I and Ithaca II are Panamanian corporations with principal places of business in Panama, which must weigh against a stay.  *See Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987); *American Shipping Line, Inc.*, 885 F. Supp. at 503; *see also Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F. Supp. 757, 761 n.4 (D. Conn. 1996) (noting that particularly in international disputes, undue hardship

---

[10] *Available at*: https://cdn.iccwbo.org/content/uploads/sites/3/2017/03/icc-note-to-parties-and-arbitral-tribunals-on-the-conduct-of-arbitration.pdf.

includes danger that evidence may grow stale or become unavailable). Any negative impacts to the quality of available evidence and discovery will no doubt significantly harm Defendants' ability to prove their case against Plaintiffs, which is witness-intensive and involves, in part, proof of a fraudulent conspiracy.

Plaintiffs argue that evidence will not go stale because discovery in the ICC Arbitration will be relevant to this litigation. Mot. at 13. But Plaintiffs ignore the fact that no procedures for the ICC Arbitration have been determined, and thus the parties to the ICC Arbitration do not even know what discovery, if any, may be available them in that proceeding. Nor would that discovery overlap entirely with Defendants counterclaims here relating to the Bulk Sale Consent Agreement, which are only pending before this Court.

A stay would also harm Defendants by denying them their right to conduct discovery immediately. Plaintiffs seek an indefinite stay of this action in an obvious attempt to avoid discovery of probative and damning evidence of Plaintiffs' fraudulent scheme. Courts find that the existence of undue hardship when a stay would deprive the non-moving party of necessary discovery. *See Wright v. SFX Entm't, Inc.*, No. 00 CIV 5354 SAS, 2001 WL 103433, at *6 (S.D.N.Y. Feb. 7, 2001) (denying a motion to stay because "a stay would work undue hardship on plaintiff. [The individual defendant] is the central actor in many of the events at issue in the arbitration—indeed, the allegations against him are the basis for plaintiff's claims against the Corporate Defendants. However, as a non-party witness in the arbitration, he cannot be compelled to appear at a pre-arbitration deposition.").

Because undue harm to Defendants from a stay is not just likely, but is a *certainty*, Plaintiffs Motion for a stay should be denied.

### D. The Equities Weigh Heavily Against a Discretionary Stay of This Action.

The Court should also deny the Motion because the equities do not support a stay.

Plaintiffs improperly want to "have their cake and eat it too" by unfairly posturing flatly inconsistent positions in (a) their motion for a preliminary injunction, in which they successfully persuaded the Court that Defendants "cannot credibly argue that its claims against Plaintiffs arise from or relate to the HMA," (ECF No. 8 at 11), and (b) their instant stay motion, in which they now adopt that same "incredible" position, arguing that "[Defendants'] claims in the Arbitration and this action all concern and arise out of Hotel TOC's decision to terminate [the HMA]" (Mot. at 7). Having received the benefit of their prior arguments that this action and the ICC Arbitration are unrelated, it would be inequitable to grant a discretionary stay of this action based on Plaintiffs' shifting attempts to manufacture the perception of overlapping issues in the Arbitration meriting a stay.

Furthermore, Plaintiffs' motion for preliminary injunction to enjoin the ICC Arbitration was granted based on Plaintiffs' insistence that the forum selection clause in the Bulk Sale Consent Agreement mandates that resolution of Defendants' claims against Plaintiffs occurs in this Court. Yet now, in obvious gamesmanship, Plaintiffs seek a stay *in favor* of resolving issues in the Arbitration—an Arbitration against which Plaintiffs vigorously argued on the basis of the bargained-for *exclusive* jurisdiction of New York courts pursuant to the Bulk Sale Consent Agreement. This too weighs against granting a discretionary stay. *See Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 564 (S.D.N.Y. 2011) (denying stay pending arbitration when carve-out in arbitration agreement demonstrated clear intent that non-arbitral claims must be resolved in court independent of arbitration).

Given these circumstances, it would be inequitable to grant a stay of this action. For all of the reasons discussed above, this Court should reject Plaintiffs' attempt to delay resolution this case and deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to stay these proceedings be denied in all respects.

Dated: New York, New York
       August 17, 2018

                           Respectfully submitted,

                           PRYOR CASHMAN LLP

By:  **/s/ Bryan T. Mohler**
                Todd E. Soloway
                Bryan T. Mohler
                Marion R. Harris
           7 Times Square
           New York, NY 10036
           (212) 421-4100
           tsoloway@pryorcashman.com
           bmohler@pryorcashman.com
           mharris@pryorcashman.com

           *Attorneys for Defendants*