UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ITHACA CAPITAL INVESTMENTS I, S.A., ITHACA CAPITAL INVESTMENTS II, S.A., and ORESTES FINTIKLIS, <br><br> Plaintiffs, <br><br> – against – <br><br> TRUMP PANAMA HOTEL MANAGEMENT LLC, and TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC, <br><br> Defendants. | **OPINION & ORDER** <br><br> 18 Civ. 390 (ER) |

Ramos, D.J.:

Ithaca Capital Investments I, Ithaca Capital Investments II, and Orestes Fintiklis (jointly, "Plaintiffs") bring this action against Trump Panama Hotel Management LLC and Trump International Hotels Management (jointly, "Trump Hotels") seeking a declaratory judgment that Plaintiffs are not subject to the jurisdiction of the International Chamber of Commerce ("ICC") and injunctive relief barring Trump Hotels from further prosecuting Plaintiffs before the ICC. Trump Hotels bring counterclaims against Plaintiffs sounding in fraud and breach of contract. Before the Court is Plaintiffs' motion to stay the action pending the resolution of a related arbitration brought by non-party Hotel TOC, Inc., against Trump Hotels. For the reasons set forth below, the motion is DENIED.

I.  BACKGROUND

This dispute concerns the relationship breakdown between the owners of units in a Panamanian condominium hotel and the companies in charge of the hotel's management. Trump

Hotels, the defendants and counter-claimants in this case, manage the hotel. Ithaca I and Ithaca II, two of the plaintiffs and counter-defendants in this case, own the majority of units at the hotel. Fintiklis, the remaining plaintiff and counter-defendant, is the principal and president of Ithaca I and Ithaca II. Hotel TOC, a non-party to this suit, represents the beneficial owners of the condominium units.

The dispute centers on events leading up to and during a meeting of hotel unit owners on October 14, 2017.[1] Ithaca I and Ithaca II had just bought the majority of units in the hotel a few months prior to the meeting. Doc. 38 at 26. On October 3, 2017, Fintiklis sent a mass email to all unit owners requesting their attendance at a meeting on October 14, 2017 to discuss owners' interests. Doc. 38 at 28. Trump Hotels learned of the meeting and warned Fintiklis not to take any actions adverse to Trump Hotels' interests at the meeting, as that would violate the sales contract he signed with Trump Hotels to buy the units. Doc. 38 at 28. Fintiklis represented to Trump Hotels that the meeting would simply be an informal meet and greet over lunch. Doc. 38 at 28. During the meeting, Fintiklis and others purported to change the composition of the leadership of Hotel TOC. Doc. 38 at 30–31. The newly reorganized Hotel TOC then immediately served Trump Hotels with a Notice of Default on the Hotel Management Agreement ("HMA") between Hotel TOC and Trump Hotels. Doc. 38 at 33.

On the same day as the meeting, Hotel TOC commenced an arbitration against Trump Hotels before the International Chamber of Commerce, alleging that Trump Hotels mismanaged the hotel and seeking $15,000,000 in damages. Doc. 50 Ex. D. In response, Trump Hotels asserted counterclaims against Hotel TOC, alleging that Hotel TOC breached the HMA and that the actions Hotel TOC took in terminating the HMA were *ultra vires*. *See* Doc. 50 Ex. A at

---

[1] These facts come from allegations made in Trump Hotels' counterclaims, Doc. 38.

¶¶ 134–141, ¶¶ 142–145.  Trump Hotels also requested the joinder of eight defendants as third-party defendants, including the Plaintiffs in this case.[2]  Trump Hotels' fifteen claims against the third-party defendants included RICO claims and claims sounding in fraud, breach of contract, and tortious interference.  Doc. 50 Ex. A at 43–70.

Three of the third-party defendants—Plaintiffs here—then filed the instant suit seeking an injunction from being joined in the ICC arbitration as third-party defendants on the grounds that the governing contract between Plaintiffs and Trump Hotels included a forum selection clause requiring any action arising from the contract to be filed in a New York court.  Doc. 1.  On March 23, 2018, the Court granted Plaintiffs' motion for a preliminary injunction.  Doc. 36.  Trump Hotels was thereafter under court order not to pursue their claims against Plaintiffs in the ICC.  On April 23, 2018, Trump Hotels made counterclaims that were substantially similar to their ICC third-party claims against Plaintiffs in this case.  Doc. 38.  On July 31, 2018, Plaintiffs moved to stay this case pending the resolution of the ICC arbitration between Hotel TOC and Trump Hotels.  Doc. 53.

## II.   LEGAL STANDARD

District courts have the inherent power to grant a stay requested by a nonsignatory to an arbitration agreement.  *Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991).  "This follows from 'the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Id.* (quoting *Landis v. North America Co.*, 299 U.S. 248, 254 (1936)).  "It is appropriate, as an exercise of the district court's inherent powers, to grant a stay 'where the pending proceeding is an arbitration in which issues involved in the case may be determined.'"  *Sierra Rutile Ltd. v.*

---

[2] In addition to Plaintiffs, the other five third-party defendants are Gary Lundgren, Morgan & Morgan, Owners Meeting of the P.H. TOC Hotel Foundation, Zacgary Lundgren, and John Does 1-10.  Doc. 50 at Ex. A.

3

*Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (quoting *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)). In addition, a stay should only be granted where the movant demonstrates that it has not taken nor will take any steps to hinder the progress of the arbitration, that the arbitration will conclude within a reasonable time, and that any delay pending the arbitration will not cause undue hardship to the non-movant. *See Nederlandse*, 339 F.2d at 442; *see also Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995). The movant bears a "heavy burden" of showing necessity for the stay. *Sierra Rutile*, 937 F.2d at 750. If the district court does grant a stay, it should tailor the stay to avoid undue prejudice to the non-movant and expressly provide that the non-movant may move to vacate the stay if the arbitration proceedings have not been concluded after a stated and limited period of time. *See id.* (citing *Nederlandse*, 339 F.2d at 442).

## III. DISCUSSION

The Court will not stay this action. Several of Trump Hotels' counterclaims will not be resolved by the arbitration and Plaintiffs have failed to show that the arbitration will conclude in a reasonable amount of time. Consequently, Plaintiffs have not successfully met their "heavy burden" of showing the necessity of a stay.

Trump Hotels brings eight counterclaims against Plaintiffs in this action. Of their counterclaims, the outcomes of the tortious interference claims and part of the declaratory judgment claim could be determined by the arbitration. The two tortious interference claims allege that Plaintiffs intentionally interfered with Trump Hotels' rights under the HMA and a settlement agreement they signed with unit owner Gary Lundgren in 2016. *See* Counterclaims at ¶¶ 29–30, 126–135, 147–155. Trump Hotels brings breach of contract claims against Hotel TOC and Lundgren respectively for breaching those agreements in the ICC arbitration. *See* Doc. 50

4

Ex. B at ¶¶ 146–153, 238–247. Under New York law, to succeed on a claim for tortious interference, a plaintiff must show that a breach of contract occurred. *See Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990); *see also Samsung Display Co. v. Acacia Research Corp.*, 2014 WL 6791603, at *4 (S.D.N.Y. Dec. 3, 2014) ("New York law is clear: nothing short of actual breach gives rise to a claim for tortious interference with contractual relations."). Thus, if the ICC arbitral panel determines that no breach of the HMA and settlement agreement occurred and collateral estoppel applied to that determination, Trump Hotels' tortious interference claims here would fail.

Trump Hotels' declaratory judgment claim also overlaps with the ICC proceedings. In this case, Trump Hotels seeks declarations (1) that Plaintiffs' actions at the meeting on October 14, 2017 breached their condo sales contract with Trump Hotels, (2) that the Notice of Default Hotel TOC issued after that meeting is null and void as Fintiklis was not the authorized representative of Hotel TOC at that time, and (3) that the HMA has not been terminated as any actions purporting to terminate it were *ultra vires*. *See* Counterclaims ¶ 162. In the arbitration, Trump Hotels seek declarations that the Notice of Default and termination of the HMA are both null and void. These are substantially similar to the second and third declarations Trump Hotels seeks in this case. *See* Doc. 50 Ex. B ¶ 157.

These are the only claims of Defendants in this case that may be resolved by the ICC arbitration. The arbitration would not dispose of the remainder of Trump Hotels' claims. It would not dispose of their claim against Plaintiffs for breaching their sales contract; Plaintiffs are not parties to the arbitration and the sales contract is not in dispute in the arbitration. It would also not dispose of Trump Hotels' fraud, fraudulent inducement, and fraudulent concealment claims. Those claims assert that Fintiklis's alleged misstatements to and misdirection of Trump

5

Hotels leading up to the signing of the sales contract and the October 14 meeting amounted to fraud. Meanwhile, Trump Hotels' counterclaims in the arbitration concern the propriety and effect of the actions Hotel TOC took at and after the meeting. *See* Doc. 50 Ex. B ¶¶ 146–162. While the October 14 meeting is a key locus of factual dispute in the ICC proceeding as well, the existence of overlapping facts does not necessarily imply the existence of overlapping issues.

The fact that "additional, significant claims in the action at bar that are not cognizable in arbitration" exist, *Sierra Rutile*, 937 F.2d at 750–51, weighs against granting a stay. Also weighing in favor of a stay is the pace of the ICC arbitration. Plaintiffs have not met their burden in showing that the arbitration will be completed in a reasonable amount of time. The arbitration was commenced on October 14, 2017. Doc. 50 Ex. D. As of the date of the parties' last communication with the Court, on August 27, 2018, no arbitral panel has been composed. *See* Doc. 58 at 8–9. Plaintiffs predicted in their briefing that an arbitral panel would soon be composed and the arbitration would finish by early 2019, but that time has passed and the parties have not updated the Court with any progress. The Court thus finds that Plaintiffs have not shown that the arbitration will be completed in a reasonable amount of time.[3] A stay is unwarranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to stay is DENIED. The parties are directed to appear for a status conference at 3:45PM, April 25, 2019, at Courtroom 619, Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. The Clerk of the Court is respectfully

---

[3] Plaintiffs argue that the Court should not consider whether the arbitration will conclude in a reasonable period because Trump Hotels bears responsibility for the ongoing delay by raising a meritless objection to a proposed arbitrator and joining other parties. The Court lacks the factual record necessary to determine whether these actions are abuses of process or proper exercises of arbitral rights, and thus cannot penalize Trump Hotels for any delay their actions may have caused.

directed to terminate the motion, Doc. 53.

SO ORDERED.

Dated: March 19, 2019
     New York, New York

                                              Edgardo Ramos, U.S.D.J.