USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: 3/29/2019

Darryl R. Graham

Akerman LLP
666 Fifth Avenue
20th Floor
New York, NY 10103

T: 212 880 3800
F: 212 880 8965

March 27, 2019

**VIA ECF**

Honorable Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

**MEMO ENDORSED**, last page.

Re: *Ithaca Capital Investments I, S.A., et al. v. Trump Panama Hotel Management LLC, et al.*, No. 18 Civ. 390 (ER) – Request for Pre-Motion Conference

Dear Judge Ramos:

Pursuant to Section 2(A)(ii) of Your Honor's Individual Practices, plaintiffs/counter-defendants Ithaca Capital Investments I, S.A. ("Ithaca I"), Ithaca Capital Investments II, S.A. ("Ithaca II" and collectively with Ithaca I, "Ithaca"), and Orestes Fintiklis ("Fintiklis" and collectively with Ithaca, "Plaintiffs") request a pre-motion conference in connection with Plaintiffs' proposed motion to dismiss Trump's Counterclaims.

**Background**

This action arises out of Hotel TOC, Inc.'s ("Hotel TOC") lawful termination of a hotel management agreement with defendants/counter-plaintiffs Trump Panama Hotel Management LLC and Trump International Hotels Management LLC (collectively "Trump") regarding a hotel in Panama City, Panama (the "HMA"). In October 2017, Hotel TOC commenced an ICC arbitration regarding Trump's mismanagement of the hotel and asserted claims for breach of the HMA, among other claims (the "Hotel TOC Arbitration"). Thereafter, Hotel TOC terminated the HMA and Trump's management of the hotel, effective December 21, 2017.

In response to the Hotel TOC Arbitration, Trump asserted counterclaims against Hotel TOC, and sought to join Plaintiffs by asserting various cross claims, alleging a conspiracy to terminate the HMA, and that Plaintiffs purportedly induced Hotel TOC to breach the HMA, tortiously interfered with the HMA and the Lundgren Settlement Agreement, and breached the Bulk Sale Agreement.[1]

---

[1] Plaintiffs understand that a Trump affiliate has been prosecuting another ICC arbitration against P.H. TOC and Mr. Lundgren for breach of the Lundgren Settlement Agreement (the "Lundgren Arbitration"), among other things, since March 2018.

48394189;2

In January 2018, Plaintiffs brought this action to enforce the mandatory forum selection clause of the Bulk Sale Agreement. After this Court granted Plaintiffs' motion to enjoin Trump from asserting claims against Plaintiffs in the Hotel TOC Arbitration, Trump filed its Answer and Counterclaims reasserting nearly all of those claims here, including for fraud, tortious interference with the HMA and Lundgren Settlement Agreement, and breach of the Bulk Sale Agreement.

On May 25, 2018, Plaintiffs requested a pre-motion conference to set a briefing schedule on Plaintiff's proposed motion to dismiss and/or stay this action pending resolution of the Hotel TOC Arbitration and Lundgren Arbitration. On June 22, 2018, the Court held the requested pre-motion conference and granted Plaintiffs leave to file a motion to stay, and stayed Plaintiffs response to the Counterclaims under the Court's decision on the motion to stay. *See* [ECF No. 51 at p. 17]; Minute Entry, dated June 22, 2018. Thereafter, the parties fully briefed the motion to stay, which the Court ultimately denied on March 19, 2019. [ECF No. 61].

Plaintiffs now write to request a pre-motion conference to set a briefing schedule on Plaintiffs' proposed motion to dismiss Trump's Counterclaims.

### **Trump's Counterclaims Should Be Dismissed**

Plaintiffs seek to move for dismissal of Trump's fraud and tortious interference counterclaims, as well as Trump's extension of liability predicated on an alter ego theory.

As for the fraud claims, each is nothing more than a dressed-up version of Trump's breach of contract claim against Ithaca, sprinkled with fraud buzz words. Since these claims are derivative of Trump's claim for breach of the Bulk Sale Agreement, they fail as a matter of law. *See Wang v. Feinberg*, No. 17 Civ. 1452 (DAB), 2018 WL 1089293, at *4 (S.D.N.Y. Feb. 6, 2018) (dismissing derivative fraud claims and explaining, "it is well established that no fraud claim is cognizable if the facts underlying the fraud relate to the breach of [a] contract."). Trump's fraud claims also fail to the extent they are based on prospective statements or assurances of future performance of contractual obligations, or the failure to disclose an intent not to perform a promise in the future. Such allegations are not actionable in fraud. *See Nash v. The New School*, No. 05 Civ. 7174 (KMW)(FM), 2009 WL 1159166, at *3 (S.D.N.Y. Apr. 29, 2009) ("a plaintiff cannot transform a breach of contract into a fraud claim simply by alleging that a defendant 'entered the … agreement while intending not to perform it.'").

Trump's fraudulent concealment claim repackages the same fraud and breach of contract allegations. *See generally Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (fraudulent concealment requires the additional allegation of duty to disclose material information). Yet, Trump fails to allege a "disclosure" duty, and instead identifies the same "contractual duty" that forecloses the other fraud claims. *See* Counterclaims at ¶ 121. Thus, this claim should also be dismissed.

Turning to the tortious interference claims, these should likewise be dismissed because Trump failed to plead (even in a conclusory way) the required elements, including that Plaintiffs' purported "intentional procurement of a third-party's breach of the contract [was] ***without***

*justification*" or that "the contract would not have been breached but for [Plaintiffs' alleged] conduct."  *See White Knight of Flatbush, LLC v. Deacons of the Dutch Congregation of Flatbush*, 159 A.D.3d 939, 940-41 (2d Dep't 2018) (emphasis added).

Finally, each claim against Fintiklis should be dismissed, as they are all premised on conclusory allegations of alter ego liability.  Fintiklis' involvement in this matter has been strictly in his capacity as an officer and director of Hotel TOC and Ithaca.  However, Trump's cursory allegations of alter ego in a few paragraphs of the Counterclaims, *see* Counterclaims at ¶¶ 20-22, 119, 140, 144, do not come close to satisfying the necessary pleading requirements.  *See Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No, 05 Civ. 10773 (RMB), 2007 WL 1489806 (S.D.N.Y. May 21, 2017).  Indeed, as Fintiklis is an officer and director of Panamanian entities, Trump must "hurdle the high bar set by Panamanian precedent" for piercing the corporate veil. *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 331 (S.D.N.Y. 2015).  "According to [Panama's] Supreme Court of Justice, piercing of the corporate veil 'is an exceptional measure that is only admissible on a provisional basis for purposes of interim relief ... .'" *Panam Mgmt. Grp., Inc. v. Pena*, No. 08-CV-2258 JFB ARL, 2011 WL 3423338, at *5 (E.D.N.Y. Aug. 4, 2011); *see also Jonas*, 116 F. Supp. 3d at 331 (noting the Supreme Court of Justice of Panama has recognized that [piercing the corporate veil] may occur in 'exceptional circumstances' and on a 'provisional basis,' where 'corporations have been used with the sole intention of defrauding third parties or violating the law, thus resulting in a case of abuse of the legal capacity.'").  Therefore, dismissal is warranted.

For these reasons, Plaintiffs respectfully request a pre-motion conference to set a briefing schedule on their proposed motion.  We thank the Court for its attention to this matter.

                                      Respectfully submitted,

                                      /s/ *Darryl R. Graham*

                                      Darryl R. Graham

cc:  All counsel (*via* CM/ECF)

---

The matter will be heard at April 25 status conference.  Defendants are directed to respond by April 11, 2019.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J
Dated:  3/29/2019
New York, New York