UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ITHACA CAPITAL INVESTMENTS I, S.A., ITHACA
CAPITAL INVESTMENTS II, S.A., and ORESTES           Civil Action No. 1:18-cv-390
FINTIKLIS,

                        Plaintiffs,
  - against -

TRUMP PANAMA HOTEL MANAGEMENT LLC,
and TRUMP INTERNATIONAL HOTELS
MANAGEMENT, LLC,

                        Defendants.
-------------------------------------------------------------------x

**PLAINTIFFS ITHACA CAPITAL INVESTMENTS I, S.A. AND
ITHACA CAPITAL INVESTMENTS II, S.A.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES .................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
PROCEDURAL BACKGROUND ............................................................................................ 2
RELEVANT FACTS ................................................................................................................. 3
ARGUMENT ............................................................................................................................. 4
    A.  Legal Standard ............................................................................................................. 4
    B.  The Proposed Amended Claims are Well-Pled ........................................................... 5
        1.  The breach of contract and attorneys' fees claims ................................................ 6
        2.  Conversion ............................................................................................................. 7
        3.  Fraud ...................................................................................................................... 8
    C.  Defendants Cannot Establish Undue Delay or Prejudice ............................................ 9
        1.  There is no undue delay ......................................................................................... 9
        2.  The amendment will not prejudice Trump ........................................................... 11
CONCLUSION ....................................................................................................................... 12
CERTIFICATE OF SERVICE ................................................................................................ 13

48964581

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*,
  No. 04 Civ. 8832 (KMK), 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) ................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................5, 6

*Bruce v. Martin*,
  No. 87 Civ. 7737(RWS), 1993 WL 148904 (S.D.N.Y. Apr. 30, 1993) ....................................9

*Chen v. New Trend Apparel, Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014) ...........................................................................................7

*DiMuro v. Clinique Laboratories, LLC*,
  572 F. App'x. 27 (2d Cir. 2014) ................................................................................................8

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .......................................................................................................8

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) .......................................................................................................6

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
  305 A.D.2d 268 (N.Y. App. Div. 2003) ....................................................................................7

*Grullon v. City of New Haven*,
  720 F.3d 133 (2d Cir. 2013) .......................................................................................................4

*Henneberry v. Sumitomo Corp. of Am.*,
  415 F. Supp. 2d 423 (S.D.N.Y. 2006) .......................................................................................5

*Kraus USA, Inc. v. Magarik*,
  No. 17 CIV. 6541 (ER), 2018 WL 4682016 (S.D.N.Y. Sept. 28, 2018) ................................11

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413 (N.Y. 1996) .......................................................................................................9

*Ricciuti v. N.Y.C. Transit Auth.*,
  941 F.2d 119 (2d Cir. 1991) .......................................................................................................5

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*,
  215 F.R.D. 105 (S.D.N.Y. 2003) .............................................................................................10

*State v. Seventh Regiment Fund, Inc.*,
  98 N.Y.2d 249 (NY 2002) .........................................................................................................7

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*,
  993 F. Supp. 2d 379 (S.D.N.Y. 2014)...................................................................................5

*Dougherty v. N. Hempstead Bd. of Zoning Appeals*,
  282 F.3d 83 (2d Cir. 2002).....................................................................................................5

*Walker v. N.Y.C. Dept of Parks & Recreation*,
  No. 91 Civ. 6949(AGS), 1998 WL 661489 (S.D.N.Y. Sept. 25, 1998) ...................................4

*Wexler v. Allegion (UK) Ltd.*,
  No. 16 CIV. 2252 (ER), 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018)...................................8

*Wolf v. Nat'l Council of Young Israel*,
  264 A.D.2d 416 (2d Dep't. 1999).........................................................................................7

**Rules**

Fed. R. Civ. P. 15(a)(2)...............................................................................................................4, 9

Fed. R. Civ. P. 9(b) .......................................................................................................................8

Fed. R. Civ. P. 12(b)(6).................................................................................................................5

**Other Authorities**

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1484 (3d ed.) .........................................................5

Plaintiffs Ithaca Capital Investments I S.A. ("Ithaca I") and Ithaca Capital Investments II S.A. ("Ithaca II," together "Ithaca" or "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for leave to amend the complaint to add five (5) new claims against Defendants Trump Panama Hotel Management LLC and Trump International Hotels Management, LLC ("Trump") for breach of the Bulk Sale Agreement ("BSA") (and in turn the Hotel Management Agreement ("HMA")), conversion, fraudulent inducement of the Bulk Sale Agreement, and for attorneys' fees.[1]

## PRELIMINARY STATEMENT

This lawsuit relates to an ongoing ICC Arbitration[2] between non-party Hotel TOC, Inc. ("Hotel TOC") and Trump. Hotel TOC commenced the ICC Arbitration to seek damages against Trump for, among other things, breach of the HMA and mismanagement of the former Trump International Hotel & Tower Panama (the "Hotel"). Hotel TOC (and Ithaca, the entities that own a majority of its voting interest), expected the dispute to be resolved in the pending ICC Arbitration, in which Trump answered and asserted counterclaims. However, Trump also improperly asserted cross-claims against the Ithaca entities and their president Orestes Fintiklis ("Fintiklis"). Because asserting these cross-claims violated the mandatory forum selection clause in the BSA, which required Trump to assert all such claims against Ithaca and Fintiklis in the courts of New York, Ithaca and Fintiklis sought to enjoin Trump from prosecuting those cross-claims in the ICC Arbitration.

After the Court granted the injunction, Ithaca expected this litigation to end and the dispute resolved through the ICC Arbitration. Instead, Trump repled the enjoined cross-claims

---

[1] Copies of the HMA and BSA are attached as **Exhibits A** and **B**, respectively, to the Proposed Amended Complaint.
[2] This arbitration is currently pending before the International Chamber of Commerce, captioned *Hotel TOC, Inc. v. Trump Panama Hotel Management LLC, et al*, ICC Case 23149/MK (the "ICC Arbitration").

as counterclaims here. Due to the overlap between these disputes, Ithaca moved to stay this case in favor of the ICC Arbitration, which the Court denied. Ithaca maintains that the ICC Arbitration will ultimately resolve (or greatly narrow) the current claims pending here. However, Ithaca also recognizes that the Court's denial of Ithaca's stay motion may have the practical effect of bringing this case to resolution before the ICC Arbitration. Moreover, due to the BSA's forum selection clause, Ithaca's new affirmative claims, many of which arose or were discovered *after* commencement of this lawsuit, must now be litigated here.

Consequently, and while reluctant to further parallel litigation, to avoid potential undue prejudice arising from these disputes' respective timelines, Ithaca seeks leave to assert its five new affirmative claims against Trump. Because this amendment will not prejudice Trump, there being no undue delay or bad faith, and because this case is still in its relative infancy, leave to amend should be "freely" granted.

## PROCEDURAL BACKGROUND

On October 14, 2017, Hotel TOC commenced the ICC Arbitration seeking to hold Trump liable for mismanagement of the Hotel and seeking to recover damages of $15 million. Hotel TOC asserted claims for breach of the HMA and breach of fiduciary duty, among others. In response, on December 5, 2017, Trump asserted various counterclaims against Hotel TOC. Trump also sought to join numerous parties to the ICC Arbitration, including Plaintiffs.

On January 16, 2018, Plaintiffs initiated this lawsuit for the sole purpose of establishing that the ICC did not have jurisdiction over Plaintiffs and thus to enjoin Trump from pursuing the cross-claims against them in the ICC Arbitration. [ECF No 1]. On March 23, 2018, after these issues were fully briefed and argued, the Court agreed with Plaintiffs and enjoined Trump accordingly. [ECF No. 36]. On April 23, 2018, Trump filed its Answer with Counterclaims ("Counterclaim") here and asserted nearly all of the same claims from the ICC Arbitration

against Plaintiffs, including for fraud, tortious interference with the HMA, tortious interference with the Lundgren Settlement Agreement, and alter ego liability against Fintiklis (the "counterclaims"), as well as others. [ECF No. 38].

On May 25, 2018, due to the overlap between the ICC Arbitration and Trump's Counterclaim, Plaintiffs requested a pre-motion conference to seek leave to move to stay this lawsuit pending resolution of the ICC Arbitration or, in the alternative, to move to dismiss the counterclaims. [ECF No. 40]. Pursuant to the Court's Individual Practices, that request stayed Plaintiffs' deadline to respond to Trump's Counterclaims. *See* Section 2(A)(ii) of the Court's Individual Practices. On June 22, 2018, the Court granted Plaintiffs' request for leave and formally stayed Plaintiffs' deadline to answer the counterclaims "pending the Court's decision on the motion to stay." [ECF Docket Order, June 22, 2018].

On March 19, 2019, the Court denied Plaintiffs' motion to stay and effectively reopened this case. [ECF No. 61]. However, prior to the deadline to answer, Plaintiffs requested a pre-motion conference to seek leave to move to dismiss the counterclaims. [ECF No. 62]. On May 3, 2019, the Court granted Plaintiffs' request for leave to move to dismiss the counterclaims and to move to amend the Complaint. [ECF Docket Order, May 3, 2019]. On May 16, 2019, the Court entered the initial scheduling order. [ECF No. 71]. As this demonstrates, the case and discovery are in their infancy.

## RELEVANT FACTS

The facts relevant to this amendment are more fully set forth in the Proposed Amended Complaint ("PAC"), attached as **Exhibit 1**, and its facts are incorporated here. Most relevant to these new claims and their timing is that Ithaca formally terminated Trump as the Hotel's manager in December 2017 and took control of the Hotel from Trump in March 2018 with the assistance of Panama courts. Consequently, Ithaca only gained full access to the Hotel's books

3

and records in March 2018, which lead to the discovery of these claims months after commencement of the action in January 2018.

Among other things, Ithaca learned the full extent of Trump's mismanagement of the Hotel, that Trump intentionally used its signing authority over the Hotel bank accounts in order to prevent withholding and evade payment of income taxes to Panama on Trump's management fees, underreported the salaries of the Hotel's employees' to improperly reduce the Hotel's and Hotel's employees' payment obligation to the Panamanian social security agency, failed to make appropriate revenue disbursements to Ithaca II (*i.e.*, the Hotel Amenities Units Owner), failed to maintain the Hotel's financial records, converted funds owed to Ithaca and transferred them to the Hotel's developer Newland International Properties Corp. ("Newland"), and that Trump made fraudulent misrepresentations of material fact regarding the Hotel's performance that induced Ithaca to execute the BSA. Because of these recently discovered facts, Ithaca has viable contract and tort claims against Trump.

## ARGUMENT

**A.** **Legal Standard**

The Court should "freely give leave" to amend pleadings when "justice so requires." Fed. R. Civ. P. 15(a)(2); *Walker v. N.Y.C. Dept of Parks & Recreation*, No. 91 Civ. 6949(AGS), 1998 WL 661489, *3 (S.D.N.Y. Sept. 25, 1998). Since Rule 15(a) is interpreted liberally, "[w]hen a party requests leave to amend his complaint, permission generally should be freely granted." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

"The Supreme Court has held that it would be an abuse of discretion, 'inconsistent with the spirit of the Federal Rules,' for a district court to deny leave without some justification, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

4

of allowance of the amendment, futility of amendment, etc.'" *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Accordingly, "[i]f no prejudice is found, then leave normally will be granted." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1484 (3d ed.); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[I]t is rare that such leave [to amend] should be denied, especially when there has been no prior amendment.").

Here, Ithaca seeks to amend the original complaint to add new claims for breach of the BSA (Ithaca II only), breach of the BSA (Ithaca II only) conversion, fraudulent inducement, and for attorneys' fees. These new contract and tort claims arise from the same general set of facts of this dispute, seek to strengthen and amplify Ithaca's original claims, and rebut Trump's baseless counterclaims. Trump can make no showing of prejudice as Trump has had notice of the operative facts of the underlying dispute from the outset and cannot overcome Ithaca's presumptive entitlement to amend the pleadings to seek relief from Trump.

B.     **The Proposed Amended Claims are Well-Pled**

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Because courts evaluate the amendment "through the prism of a Rule 12(b)(6) analysis," courts accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Henneberry v. Sumitomo Corp. of Am.*, 415 F.

5

Supp. 2d 423, 433 (S.D.N.Y. 2006).  However, courts are not required to credit legal conclusions, bare assertions, or conclusory allegations.  *Iqbal*, 556 U.S. at 678, 681, 686 (citing *Twombly*, 550 U.S. at 555).

1. *The breach of contract and attorneys' fees claims*

In proposed counts seven, eight, and eleven, Ithaca II asserts three claims for breach of the BSA and, through it, breach of the HMA.  [PAC at ¶¶ 1 – 200, 238-254, 269-274].  Under New York law, to state a claim for breach of contract, the plaintiff need only allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation omitted).

It is undisputed that the BSA and HMA constitute enforceable agreements.  [ECF No. 1 at ¶¶ 5, 23; ECF No. 38 at ¶¶ 1, 5, 23].  Next, the "Owner of the Amenities Unit" is a party and signatory to the HMA, *see* [HMA at p. 1, 96], and that Ithaca II is a party to the BSA.  *See* BSA at p. 1.  Pursuant to the BSA, Ithaca II is the "successor" to the Owner of the Amenities Unit.  *Id.* at ¶ 3(A) ("By virtue of its purchase of the Hotel Amenities Unit, Ithaca II shall be bound by the terms of the Hotel Management Agreement as successor to the Hotel Amenities Units Owners."). As such, Ithaca II is a party to both of these enforceable agreements.  As alleged in the PAC, Trump owed Ithaca II certain obligations pursuant to the BSA, and in turn the HMA, which Ithaca alleges Trump has breached for various reasons.  [PAC at ¶¶ 238-254, 269-274].  Finally, because Ithaca further alleges that those breaches caused Ithaca II harm, Ithaca II has adequately plead claims for breach of contract and is entitled to recover its reasonable attorneys' fees and costs.  *Id.*

### 2. *Conversion*

In proposed count ten, Ithaca asserts a claim for conversion based on Trump's improper transfer of funds to Newland. Ithaca, as the owner of 202 Hotel Units and the Hotels Amenities Unit, was entitled to revenues generated by those assets, which Trump held in the Hotel's reserve account in trust for Ithaca, to be used for Hotel maintenance and renovations. However, Trump converted Ithaca's funds – of not less than $2 million – and transferred them to, among others, Newland. *See* PAC at ¶¶ 255-259. Based on this conduct, Trump is liable for conversion.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (NY 2002) (internal quotation marks omitted). Normally, "[f]or an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04 Civ. 8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007). However, such a demand is not required where "making the demand would otherwise be futile. *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 452 (S.D.N.Y. 2014); *see also Seventh Regiment Fund*, 98 N.Y.2d at 260 (determining that if demand would be futile because the circumstances show that the defendant knows it has no right to the goods, a demand is not required). Separately, a claim for conversion "cannot be predicated on a mere breach of contract." *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't. 1999). Therefore, to survive a motion to dismiss, a plaintiff alleging conversion must plead "independent facts sufficient to give rise to tort liability." *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 269 (N.Y. App. Div. 2003) (internal quotation marks omitted).

Ithaca's well-pled allegations establish a conversion. Ithaca's funds were withheld from Hotel revenue for the specific purpose of being held in separate reserve accounts by Trump for

7

Ithaca's benefit, but Trump used the funds to serve its own private purposes, including, but not limited to, transferring those funds to Newland and Trump (for payment of Trump's management fee). Because the funds were not held in trust for Ithaca as promised, Trump's acts were wrongful and not merely a violation of any contractual obligation. Moreover, as Trump was undoubtedly aware that it had no authorization to use Ithaca's funds for its own purposes, a formal demand to return the funds was not required.

### 3. *Fraud*

In proposed count eleven, Ithaca asserts a claim for fraud based on Trump's misrepresentations of material fact, which induced Ithaca to enter into the BSA. *See* PAC at ¶¶ 260-268. Based on this conduct, Trump is liable for fraud.

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wexler v. Allegion (UK) Ltd.*, No. 16 CIV. 2252 (ER), 2018 WL 1626346, at *6 (S.D.N.Y. Mar. 30, 2018) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)) (citation omitted). Further, a fraud claim must also satisfy the heightened pleading requirements of the Federal Rule of Civil Procedure 9(b) by stating the circumstances constituting fraud with particularity. *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-20). Specifically, Rule 9(b) requires a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 F. App'x. 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"Fraudulent inducement involves 'a misrepresentation of *present* fact, not of future intent, collateral to a contract' and used to induce the defrauded party to sign the contract." *Bruce v. Martin,* No. 87 Civ. 7737(RWS), 1993 WL 148904, at *5 (S.D.N.Y. Apr. 30, 1993) (emphasis added) (citation omitted).  Either an affirmative misrepresentation or the omission of a material fact can form the basis of a fraudulent inducement claim. *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421 (N.Y. 1996).

Ithaca has pled fraud with specificity and these well-pled allegations support a plausible inference that Trump knowingly made false representations of fact to Ithaca regarding the Hotel's performance with the express purpose of inducing Ithaca to enter into the BSA.  [PAC at ¶¶ 260-268].  Thus, this claim is also not futile.

C. **Defendants Cannot Establish Undue Delay or Prejudice**

The Court should grant Ithaca's request for leave to amend because Trump cannot establish undue delay or prejudice.  To demonstrate prejudice under Rule 15(a), Trump must establish that the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Mylan Ireland Ltd.,* 2019 WL 1486969, at *5 (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

1. *There is no undue delay*

Although this lawsuit has been pending for approximately sixteen (16) months, the case was stayed for ten (10) of them.  From January 16, 2018 to March 23, 2018, the litigation was solely confined to litigating the narrow question of whether Trump could pursue certain claims against Ithaca in the ICC Arbitration.  After the Court enjoined Trump, Plaintiffs considered this

9

limited lawsuit resolved, as the goal for initiating it was achieved.³  One month later, however, Trump asserted counterclaims and breathed unexpected new life into this litigation, which Plaintiff then moved to stay in favor of the ICC Arbitration.

From May 25, 2018 to March 19, 2019, this litigation was effectively stayed while Plaintiffs' motion to stay was pending.  During that period, Ithaca discovered many of the factual predicates that support the five new claims that are the subject of this motion.  However, because the case was functionally stayed, and seeking to add these new claims then would have been counter to Plaintiffs' pending request, Ithaca chose to wait at least until the Court's ruling.  Indeed, had the Court granted the stay, and the ICC Arbitration ended – either by global settlement or otherwise – Ithaca's new claims would likely have been resolved there.  Alternatively, had they not been, Ithaca would have sought leave to amend (as it is doing now) or filed a new lawsuit in this Court.

On balance, and under these unique facts, the record demonstrates that Ithaca has not unduly delayed asserting these claims, especially as this lawsuit – putting aside the stays and the injunction litigation – has only been pending for approximately 11 weeks.  Rather, Ithaca proactively brought this issue to the attention of Trump and the Court at the first status conference scheduled when the Court lifted the stay on March 19, 2019.  As has been recognized, "the Second Circuit has permitted amendment where leave to amend was sought and granted after significantly longer periods of time than has passed in this case."  *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 106-7 (S.D.N.Y. 2003) (citing

---

³ After granting the injunction, the Court inquired into next steps, and the parties responded accordingly.  *See* March 22, 2018 Tr. at 76: 9-11 (Mr. Bernstein (Plaintiffs): "I think that we have the relief that we sought from this Court, and I'm not sure that there is anything further to do in this particular case."); *id.* at 76:23-25 (Mr. Amsellem (Defendants): "Your Honor, I need to speak with my client … .  We are not sure right now at this moment.").

48964581

*Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 2995) (four years was not undue delay)).

      2.     <u>The amendment will not prejudice Trump</u>

The parties have yet to commence discovery in any meaningful way. Just three days ago, the parties exchanged initial disclosures, and while document requests have been served, no documents have been exchanged. Moreover, the parties have yet to formalize ESI procedures, negotiate (or discuss) search terms for ESI review, reach an agreement as to confidentiality, propound interrogatories, or take any depositions. The limited discovery exchanged likely covers or at least touches on the new claims, and the discovery yet to come can easily be adjusted to account for them. As a practical matter, new claims will "undoubtedly require additional discovery and trial preparation and may even delay this case, [but] given the early posture of this case – motions to dismiss are being addressed and pleadings are not even closed – [the] proposed amendment is not unduly prejudicial." *Kraus USA, Inc. v. Magarik*, No. 17 CIV. 6541 (ER), 2018 WL 4682016, at *11 (S.D.N.Y. Sept. 28, 2018). Moreover, like in *Magarik*, Ithaca "could not have brought these claims with its original [complaint] … since it did not learn of them until [months later], requiring it to move to amend, which it did without significant delay." *Id.* For the reasons set forth in *Magarik*, Trump cannot establish expenditure or delay-related prejudice.

Moreover, Trump is solely responsible for the need to amend the Complaint. Had Trump executed its obligations under the HMA and BSA, paid the appropriate taxes owed, and not converted Ithaca's property, these amendments would be unnecessary. However, the allegations demonstrate that Trump undertook this conduct, and thus it is well-equipped and should be obligated to respond to these allegations.

11

Finally, if this amendment is not permitted, Ithaca will be forced to initiate a new lawsuit to preserve its rights. Since such a new lawsuit would be "related" to this action, it likely would be assigned to this Court and would likely be consolidated with this action in any event. Thus, Ithaca submits the better approach is to have all of these claims joined together in one action now.

## CONCLUSION

Ithaca's Proposed Amended Complaint is made in good faith and does not prejudice Trump. Given the posture of this case, it is efficient and preferred to have all claims adjudicated in the current litigation at this stage, especially because it will coincide with the natural commencement of discovery. Trump is not required to expend significant additional resources and any delay, if at all, has been immaterial. Because the new claims are well-pled and there is no prejudice, bad faith, or undue delay, Ithaca's motion for leave to amend should be granted.

Dated:  New York, New York
       June 3, 2019

AKERMAN LLP

By: */s Darryl R. Graham*
    Joshua D. Bernstein, Esq.
    Darryl R. Graham, Esq.
    Kathleen M. Prystowsky, Esq.
    666 Fifth Avenue, 20th Floor
    New York, New York 10103
    Tel: (212) 880-3800

*Counsel to Plaintiffs Ithaca Capital Investments I, S.A., Ithaca Capital Investments II, S.A., and Orestes Fintiklis*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to the following parties:

Todd E. Soloway, Esq.
Bryan T. Mohler, Esq.
Marion R. Harris, Esq.
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
tsoloway@pryorcashman.com
bmohler@pryorcashman.com
mharris@pryorcashman.com

*Attorneys for Trump*

/s Darryl R. Graham
Darryl R. Graham

48964581