**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ITHACA CAPITAL INVESTMENTS I, S.A., ITHACA CAPITAL INVESTMENTS II, S.A., and ORESTES FINTIKLIS,<br><br>                    Plaintiffs,<br><br>     v.<br><br>TRUMP PANAMA HOTEL MANAGEMENT LLC, and TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC,<br><br>                              Defendants. | Civil Action No. 1:18-cv-390-ER |

### STIPULATED AND [~~PROPOSED~~] ORDER CONCERNING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION

Plaintiffs Ithaca Capital Investments I, S.A., Ithaca Capital Investments II, S.A., and Orestes Fintiklis ("Plaintiffs") and Defendants Trump Panama Hotel Management LLC and Trump International Hotels Management, LLC ("Defendants") (collectively, "the Parties" and each a "Party"), through their attorneys of record, hereby stipulate as follows:

WHEREAS, counsel for the Parties have met and conferred regarding certain production parameters of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and [~~Proposed~~] Order Concernning Protocol for Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1.      All Parties are bound by and subject to the terms of this Order.

2.      <u>Definitions</u>.

        a.      "Discovery Material" is defined as all products of discovery and all relevant information derived therefrom, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

        b.      Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

3.      <u>Cooperation</u>.  The Parties shall conduct discovery in a cooperative manner, including without limitation, by producing ESI in accordance with Fed. R. Civ. P. 34.

4.      <u>Meet and Confer</u>.  Without waiving any rights under any applicable rules or law, the Parties agree to meet and confer in good faith regarding the production of ESI. Absent an order from the Court upon a showing of good cause, a Party from whom ESI has been requested shall not be required to search for responsive ESI from sources that are not reasonably accessible without undue burden or cost.

5.      <u>Deduplication</u>.  The Parties will make reasonable efforts to deduplicate ESI vertically within each custodian and horizontally across custodians.  ESI will be considered duplicative if it shares idential MD5HASH or SHAHASH values (or such other, commonly-used cryptographic hashing process that a Party uses in connection with the processing of ESI).

6.      <u>Privilege Logs and Redaction</u>.

        a.      <u>Email</u>:  For each stand alone email document or .msg file that contain a chain emails, the parties may use the metadata associated with the last-in-time email as the email to be logged on the privilege log..

        b.      <u>Data Load File</u>:  Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

        c.      <u>Privilege Redactions</u>:  A document containing privileged content or work product need not be redacted if the content of the document that would otherwise be produced following the privilege redaction is non-responsive.

        d.      <u>Privilege Logs</u>:  Documents withheld on the basis of privilege and/or work product protection may be grouped in categories based on content, and a categorical privilege log prepared, including a privilege description for each category.  The description shall include a summary of the facts supporting the privileged or protected status of the information included within the category.  The categorical log shall also include the basic metadata for each document within the category (e.g., date/time sent/received/created/last accessed/last modified, to/from/cc, subject line/file name, and document type).

e.  Documents Presumptively Not to Be Logged on Privilege Log.
The following documents that may be withheld on the basis of privilege and/or work product
protection presumptively need not be included on a privilege log:

i.  Work product created by counsel (in-house or outside) or
by an agent of counsel (in-house or outside), after the date upon which the Party
represented by such counsel reasonably anticipated litigation; or

ii.  Communications solely between trial counsel and its client.

f.  Dispute Resolution.  After the receipt of a privilege log, any Party
may dispute a claim of privilege.  Prior to seeking Court intervention, the Party disputing,
questioning, or otherwise objecting to a claim of privilege shall provide in writing the
identification of the documents for which it questions the claim of privilege and the reasons for
disputing, questioning, or otherwise objecting to the privilege designation.  Within thirty days,
the Party that designated the documents as privileged will provide a written response explaining
the basis for its claim or privilege, or if applicable, de-designating documents as privilege and
producing such documents in accordance with this Order.  Thereafter, if the Parties continue to
disagree, they will then then meet and confer in good faith as to the claims of privilege.  If
agreement has not been reached after thirty days, any Party may request a conference from the
Court to seek a ruling on the privilege designation(s).

7.  Production Format for ESI.

a.  General Provisions.  Unless the Parties agree to a different format
other than that described in this Section, documents originally collected as electronic files will be
converted to Group TV *.tif image files at 300 dpi or greater.  Original document orientation will
be maintained (*i.e.,* portrait to portrait and landscape to landscape) except for spreadsheets,
which will be produced in accordance with paragraph 8(f), *infra*.  Each *.tif file will be assigned
a unique name matching the Bates number of the corresponding page.  Such files will be grouped
in folders of 1,000 *.tif files each.  Separate folders will not be created for each document.  After
such production in image file format is complete, a Party must demonstrate a particularized need
for production of electronic documents in any other format.  The Parties agree that all .tif images
will be produced in color.

b.  Document Text.  If electronic files do not contain text that is
redacted, including but not limited to the assertion of a privilege or other protection from
disclosure, then the entire document text will be produced as follows:  (i) on a document level
basis; (ii) named for the beginning Bates number; (iii) in a separate Text folder with sub-folders
so each folder holds 1000 *.txt files; along with (iv) a load file that contains the Bates number
followed by a comma space and then the full path to the *.txt file, including the name of the *.txt
file.  Redacted documents will be OCR'd, and all such OCR text will be Unicode-compliant
(UTF-8).

c.  Parent-Child Relationships and Embedded Documents.
Parent-child relationships (the association between emails and attachments) will be preserved.
Email attachments will be consecutively produced with the parent email record.  Substantive

embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded.

   d. <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.,* "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file was processed.

   e. <u>Word Processing Files</u>.  The Parties disagree on whether word processing files should be initially produced in native format.  As a compromise, the Parties agree that all word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be processed to *.tif images.  Word processing files will be processed to *.tif format without tracked changes and/or comments showing.  Where the word processing files to be produced contain hidden content, including but not limited to comments and track changes, the Producing Party will produce such documents in native format.  Thereafter, the requesting Party may make reasonable and good faith requests for production of particular word processing documents in native format.  To the extent the Producing Party objects to such request, the Parties will meet and confer in good faith to resolve the dispute.

   f. <u>Spreadsheet Files</u>.  All spreadsheet files, including without limitation Microsoft Excel files (*.xls and *.xlsx) will be produced in native format, with the file named with a unique identification (Bates) number for the document with the appropriate extension based upon the original file.  In the case of redacted Excel files, the Parties will use a native file redaction tool and produce native file redactions.  To the extent the native redaction tool is unavailable, the Parties will meet and confer regarding the planned approach for such redactions.

   g. <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint presentation files (*.ppt and *.pptx) will be processed to *.tif images showing comments, hidden slides, speakers' notes, and similar data.  The requesting Party may make reasonable and good faith requests for particular presentation files to be produced in native format.  The Parties agree to meet and confer in good faith and reach an agreement about whether and to what extent cost-sharing is appropriate prior to any such production of presentation files in native format.

   h. <u>Audio and Video Files.</u>  The Parties agree to produce any audio and video files in native format, with the file named with a unique identification (Bates) number for the document with the appropriate extension based upon the original file.

   i. <u>Database Records</u>.  The Parties acknowledge that documents and information stored in a database or database management system constitute Discovery Material that is subject to collection, review and production.  In order to facilitate the efficient review and production of such documents and information, where available, the Parties will query the database for discoverable information and generate a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, which contains information concerning the available folders, subfolders, and document

files available in the database.  Thereafter, the Parties will meet and confer regarding the folders, sub-folders, documents, and any other information that should be reviewed for responsive documents.

    j. <u>Non-Standard Files</u>.  Non-standard electronic files, include, but are not limited to, source code, transactional data, database files, and proprietary applications not publicly available.  The Parties agree to meet and confer in good faith and reach an agreement concerning a reasonable production format for such files.

    k. <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that arc typed as such by users) will be produced as part of the document text.

    l. <u>Bates Numbering</u>, Files will be named according to the Bates number of the corresponding *.tif image.  The Bates number will:

        i. be consistent across the production;

        ii. contain no special characters; and

        iii. be numerically sequential within a given document.

Attachments to documents (or slipsheets in the case of withheld documents) will be assigned identification numbers that directly follow the identification numbers on the documents to which they were attached.  If a identification number or set of identification numbers is skipped, the skipped number or set of numbers will be noted, In addition, wherever possible, each *.tif image will have its assigned identification number electronically "burned" onto the image.

Each Party shall designate a prefix to the Bates number indicating the Party on behalf of whom the file is being produced.

    m. <u>Load File Formats</u>.  ESI and Scanned Collection documents will be produced in Concordance load file format.  Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

    n. <u>Metadata to be Produced</u>.  For all documents collected, the following metadata fields will be produced in a load file for each document to the extent that such information is available at the time of collection and processing, except to the extent that a document has been produced with redactions.  The term "Scanned Collections" refers to all documents that are in hard copy form at the time of their collection.  The term "Email and E-Doc Collections" refers to all documents that are in electronic form at the time of their collection.

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|-------|-------------|---------------------|------------------------------|---------|
| BEGBATES [Key Value] | ABC 000001 | Yes | Yes | First Bates number of email/doc |
| ENDBATES | ABC 000008 | Yes | Yes | Last Bates number of email/doc |
| BEGATTACH | ABC 000009 | Yes | Yes | First Bates number of attachment (s) |
| ENDATTACH | ABC 000015 | Yes | Yes | Last Bates number of attachment (s) |
| PARENT_BATES | ABC 000001 | Yes | Yes | First Bates number of parent email, if appropriate |
| CHILDBATES | ABC 000009, ABC 000012 | Yes | Yes | First Bates number of "child" attachment(s): can be more than one Bates number listed; depends on number of attachments |
| CUSTODIAN(s) | John Beech | Yes | Yes | Mailbox(es) where the email resided |
| DUPLICATE CUSTODIAN(s) | John Beech Mary Jane | N/A | Yes | Mailbox(es) where the email resided |
| FROM | John Beech | N.A | Yes | For email |
| TO | Janice Birch | N/A | Yes | For email |
| CC | Frank Maple | N/A | Yes | For email |
| BCC | John Oak wood | N/A | Yes | For email |
| SUBJECT | Changes to Access Database | N/A | Yes | Subject of the email |
| TITLE | Changes to Access Database | N/A | Yes | Title of the E-Doc |
| DATE SENT | 10/10/2005 | N/A | Yes | Date the email was sent |
| TIME SENT | 07:05 PM | N/A | Yes | Time the email was sent |
| FILE NAME | File.doc | N/A | Yes | File name |
| FILE_EXTEN | MSG(email) DOC (attachment - ex. Word document) | N/A | Yes | The tile extension will vary depending if the original document is a parent email or a child attachment or a loose E- Doc |
| AUTHOR | John Beech | N/A | Yes | Attachment or loose E-Doc Metadata; Author of the original native file. |
| DATE CREATED (C) | 10/08/2005 | N/A | Yes | For attachment or loose E-Doc - in properties.  For scanned collections this is the date of document. |
| DATE_MOD(M) | 10/09/2005 | N/A | Yes | For attachment or loose E-Doc — in properties |
| DATE ACCESSED (A) | 10/10/2005 | N/A | Yes | For attachment or loose E-Doc - in properties |
| PRINTED DATE | 10/10/2005 | N/A | Yes | Attachment or loose E-Doc metadata.  Latest print date for native file. |
| FILESFZE | 32604160 | N/A | Yes | Size of file |

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| PATH | C:\MYDOCUMENTS\DOEJ | N/A | Yes | Path where attachment or local where local file was stored. |
| HIDDEN CONTENT | Track Changes[1] | N/A | Yes | A description of any content that is hidden, such as track changes, hidden rows, comments, etc. |
| INTFILEPATH | Personal Folders/Deleted Items | N/A | Yes | Location of email |
| FULLTEXT | Fulltext\001\001\ABC 000001.txt | Yes | Yes | Text of the email or attachment or loose E-Doc |
| NativeLink | Natives\001\001\ABC 000001.XLS | N/A | Yes | Path where Native file is located on production delivery media |
| REDACTED | Yes | N/A | Yes | If document has been redacted |
| MD5HASH or SHAHASH | 64399513b7d734ca90181b27a62134dc | N/A | Yes | For all electronic documents |

8.     Encryption.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

9.     Authenticity and Admissibility.  Nothing in this protocol shall be construed to affect the relevance, authenticity or admissibility of any document or data.  All objections to the relevance, authenticity or admissibility of any document or data are preserved and may be asserted at any time.

10.     Disclosures of Protected Discovery Material.  The Parties incorporate the provisions of the Stipulated Protective Order.

11.     Confidential Information.  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated pursuant to the Stipulated Protective Order.

---

[1] If distinct values for Hidden Content are not available in the Party's eDiscovery vendor's processing engine, the Party will, at a minimum, provide a Yes/No value in this field for each record produced.

AKERMAN LLP

PRYOR CASHMAN LLP

_/s/ Kathleen M. Prystowsky_

Joshua D. Bernstein
Darryl R. Graham
Kathleen M. Prystowsky
666 Fifth Avenue, 20th Floor
New York, New York 10103
(212) 880-3800

_Attorneys for Plaintiffs_

_/s/ Marion R. Harris_

Todd E. Soloway
Bryan T. Mohler
Marion R. Harris
7 Times Square
New York, New York 10036
(212) 421-2100

_Attorneys for Defendants_

**SO ORDERED**

_____        _____

Edgardo Ramos, U.S.D.J

Dated: ____6/24/2019_____

New York, New York

49177530;3